In re ELKINS ENERGY CORPORA-
TION, Debtor.

**ELKINS ENERGY CORPORATION,**
**Debtor,**

v.

**CENTRAL SUPPLY CO. OF VA.,**
**INC., Creditor.**

**Bankruptcy No. 79–00063–B.**

United States Bankruptcy Court,
W.D. Virginia,
Big Stone Gap Division.

July 26, 1984.

James E. Nunley, Bristol, Va., Robert T. Copeland, Abingdon, Va., for debtor.

Mark K. Flynn, Tazewell, Va., for creditor.

James W. Elliott, Jr., Bristol, Va., trustee.

**MEMORANDUM OPINION**
**AND ORDER**

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the court concerns the allowance and payment to be credited upon the claim of Central Supply Company of Virginia, Inc. ("**Creditor**") by the Chapter VI Trustee herein.

Elkins Energy Corporation ("**Debtor**") filed in this court in 1979 a Chapter XI petition seeking reorganization of its extensive coal mining operation in Southwest Virginia. Thereafter, the creditor filed with the Clerk of this court its general unsecured claim in the sum of $358,885.14. The Debtor filed objections to the claim and, in August, 1981, the court entered summary judgment for the Creditor in the sum of $205,000.00, reserving judgment as to the balance pending trial of the issues. Trial was held and the court, on May 12,

1982, rendered judgment for the remaining balance of $153,885.14. 21 B.R. 481.

Following confirmation and partial disbursement under the Plan, the Debtor's fortunes deteriorated and, thereafter, in June of 1982, this case was converted to Chapter VI and a Trustee appointed.

The Creditor claims entitlement to a payment equal to the twenty per cent of its allowed portion of $153,885.14, amounting to $30,777.03, in any distribution by the Trustee herein subsequent to the payment of all priority claims and administrative expenses, but before any further credits are payable to the remaining portions of all other general unsecured claims. The Trustee objects to the Creditor's position, claiming that the Creditor is entitled only to distribution *pro rata* with other general unsecured creditors and, therefore, is not entitled to favorable consideration and priority payment of the twenty per cent disbursement.

Additionally, the Creditor contended that if distribution is not made to general unsecured creditors from the remaining assets in the hands of the Trustee after payment of all priority and administrative expenses, that the Trustee should be required to recoup *pro rata* from all creditors a proportionate sum of the twenty per cent disbursement and pay the same to the Creditor. This position of requiring an affirmative act of the Trustee appears to have been abandoned in briefs of the Creditor [1], and the essential issue before the court is whether or not in any future distribution to general unsecured creditors by the Trustee, the Creditor is entitled to first receive its twenty per cent credit upon its remaining general unsecured creditors' claims.

Counsel for the Trustee and the Creditor filed briefs upon the respective issues and, after mature consideration of same and the law applicable thereto, so far as the court is able to determine and as set forth hereafter, the court concludes that the creditor is entitled to the twenty per cent payment prior to any further disbursement to general unsecured creditors.

Neither counsel for the parties nor the court has been able to find a case precisely in point. The case of *In re Fashion Spear, Inc.*, 15 B.R. 137 (W.D.Pa.1981), cited by counsel, is somewhat similar. In this case, the Pennsylvania court was dealing with a post-confirmation and pre-conversion debt as it relates to other general unsecured creditors and, hence, not precisely in point. Section 64 (11 U.S.C. § 104) of the *Bankruptcy Act* of 1898 governed the decision, and § 381(2) (11 U.S.C. § 781[2] of said *Act* place post-confirmation claims upon the same level as other general unsecured claims. Here, we deal not with a post-confirmation debt governed by § 381, but a pre-petition debt unpaid to the extent of twenty per cent of the prior disbursements solely because the claim was challenged by the Debtor and remained in a state of litigation, thereby preventing credits upon that portion of the claim.

This is a court of equity and, in making decisions with respect to the inter-related creditors and claims, the court must apply equitable principles. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939). In *Pepper*, the court stated:

"... In the exercise of its equitable jurisdiction, the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate."

In *Littleton v. Kincaid*, 179 F.2d 848 (4th Cir.1950), *cert. den.* 340 U.S. 809, 71 S.Ct. 38, 95 L.Ed. 595, the court, citing *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244, dealing with payment of post-petition interest upon claims, stated a fundamental principle of Bankruptcy law— that it is inequitable to permit either prejudice or an undue advantage to one creditor over another when estate funds are *in*

---

1. The Creditor may wish to renew its motion in this respect following the Trustee's distribution if it deems appropriate under the principles of law set out in the case of *In re Lily KnitSilk, etc.—Fulton County Silk Mills, etc. v. Irving Trust Co.,* 73 F.2d 52 (2nd Cir.1934).

*custodia legis.* One of the primary reasons given for this principle is stated therein by the late distinguished Judge Soper thusly:

"... (a) The delay in payment is not the act of the debtor, but is an act of law for the mutual benefit of the creditors."

Where the creditor's claim was held up and payment under the confirmed Plan deferred solely because of the objections filed by the debtor to its claim, the delay occasioned by the court's adjudication of this claim and objections thereto filed by the Debtor should not be used as a means of giving other general unsecured creditors what amounts to a preferential payment upon their claims. As stated by Judge Soper in *Littleton, supra,* the delay in payment was not the fault of the Creditor, but "an act of law".

To the extent that funds may be available to permit the Trustee to disburse to general unsecured creditors, such creditors cannot reasonably complain that the Creditor herein will receive an equal twenty per cent credit prior to any further disbursements to their claims. If the Creditor's claim had, in fact, been determined when the post-confirmation disbursements were made by the Debtor to the extent of twenty per cent, this Creditor would have realized the full payment upon its claim as filed of $385,885.14. But for the stage of litigation and the delay occasioned thereby, this Creditor would have previously received the credit of $30,777.03, representing the twenty per cent never received solely because of the Debtor's challenge and objection thereto.

Therefore, for the reasons stated, it is the court's conclusion that following the disbursement by the Trustee of the priority claims set forth in § 64 (11 U.S.C. § 104), any remaining funds disbursed to general unsecured creditors shall be made only after payment to this Creditor the sum of $30,777.03, and its claim, along with all other general unsecured creditors, shall share distribution of such remaining funds to the extent of the balance due, less credits made thereon, all of which is **SO ORDERED**.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor, Debtor's Attorneys, to the Trustee, and to counsel for the Creditor hereinabove referred to.