In re FASHION SPEAR, INC.,
Bankrupt.

Bankruptcy No. 77–317.

United States Bankruptcy Court,
W. D. Pennsylvania.

Oct. 29, 1981.

Hillard Kreimer, McCrady, Kreimer, Ravick & Bonistalli, Pittsburgh, Pa., for trustee.

B. A. Karlowitz, Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, Pa., for debtor in possession and debtor.

## MEMORANDUM OPINION AND ORDER

JOSEPH L. COSETTI, Bankruptcy Judge.

### DISCUSSION

This case is governed by the former Bankruptcy Act, because it was commenced by the Debtor filing its Voluntary Petition under Chapter XI on April 22, 1977. The Debtor in Possession filed its Plan of Arrangement on May 24, 1978. The Plan was confirmed by Order of Court on June 8, 1979. The Debtor in Possession defaulted in the terms of the Plan of Arrangement and on March 31, 1980 the Debtor in Possession filed an Application to be Adjudged a Bankrupt. On March 31, 1980 the Court entered an Order adjudging Debtor in Possession a Bankrupt and appointing a Trustee for the Bankrupt Estate. The Trustee filed his First and Final Report and Account with this Court on April 1, 1981, showing that the Trustee has in his possession a current cash balance of $133,882.52.

The transcript of the final hearing indicates that the following amounts are due or have been partially paid for fees and expenses:

| Applicants | Amounts |
|---|---|
| Bankruptcy Fees and Expenses (hereinafter called Class A) | |
| Trustee | $12,248.37 |
| Counsel for Trustee | 5,004.98 |
| Counsel for Debtor | 6,317.95 |
| Chapter XI Fees and Expenses (hereinafter called Class B) | |
| Counsel for Debtor in Possession | $22,650.00 |
| Accountants for Debtor in Possession | 8,060.00 |
| Counsel for Creditors Committee | 7,500.00 |
| Secretary to Creditors Committee | 2,487.00 |

In addition, there are tax claims against the Debtor totaling $37,998.19 (hereinafter called Class C). It is not clear whether these taxes arise prior to the Plan or in the interim between the Plan and Chapter 7. The claims of unsecured creditors arising during the period between confirmation of Debtor's Plan and adjudication, "Interim Creditors" (hereinafter called Class D), total approximately $207,000, out of the total of unsecured claims of $382,760.00. We shall hereafter label those unsecured claims dealt with in the Plan as Class E. Under the Plan, Class E was to have been paid 25 cents on the dollar.

Some of the fees and expenses have been paid pursuant to an Order of this Court of August 10, 1979, are as follows:

| | |
|---|---|
| Counsel for Debtor in Possession | $ 3,900.00 |
| Accountants for Debtor in Possession | 5,000.00 |
| Counsel for Creditors Committee | 4,900.00 |
| Secretary to Creditors Committee | 1,500.00 |

Depending on what priority is given to the various administrative claims, these various classes will be paid very different amounts. There is no disagreement that Class A administrative expenses are entitled to the first priority. The difficulties arise with respect to those claims which we have denominated Class B, C, D and E. To what priority are they entitled, if any? The priority° of these claims is important because there is not enough money in the estate to pay all claims.

The Trustee argues that Class B claims ought to share on a pro-rata basis with the "Interim Creditors", Class D, and following

that taxes, Class C, should be paid. Lastly, the Trustee argues the pre-petition unsecured creditors, Class E, should be paid in accordance with the Plan of Arrangement.

The Counsel for the Debtor argues that Class B claims should be paid following Class A claims, then Class C should be paid, and finally Class D and Class E, as provided for in the Plan, should be paid together pro-rata.

ANALYSIS

■ The Counsel for the Debtor relies on Section 381(2) of the Bankruptcy Act. (11 U.S.C. § 781(2).) The section states:

Sec. 381 Where, after the confirmation of an arrangement, the court shall enter an Order directing that bankruptcy be proceeded with—

(2) the unsecured debts incurred by the debtor after the confirmation of the arrangement and before the date of the entry of the final order directing that bankruptcy be proceeded with shall, unless and except as otherwise provided in the arrangement or in the order confirming the arrangement, share on a parity with the prior unsecured debts of the same classes, provable in the ensuing bankruptcy proceeding, and for such purpose the prior unsecured debts shall be deemed to be reduced to the amounts respectively provided for them in the arrangement or in the order confirming the arrangement, less any payment made thereunder;

Counsel for the Debtor argues that unless Interim Creditors were given administrative claim status, either in the Plan of Arrangement or in the Order confirming the plan, Section 381 should be followed. Counsel for the Debtor argues that there is no such language in the Plan or the Order and that, therefore, his proposed order of distribution should be the one adopted by this Court.

The Trustee, on the other hand, argues that Section 381 should not apply in the instant case because under the plan there is a limited but continuing grant of jurisdiction to the Court, and pursuant to this jurisdiction this Court using its equity pow-

er can grant administrative claim status to the Interim Creditors.

Further, the Trustee argues the Debtor in Possession asked this Court to exercise continuing and unlimited jurisdiction over the case when it asked this Court to adjudicate the Debtor a Bankrupt.

The language to which the Trustee refers is found in paragraph VII of the Plan of Arrangement. Paragraph VII states:

> The Bankruptcy Court shall retain jurisdiction of this proceeding pursuant to the provisions of Section 368 of the Bankruptcy Act for the purposes set forth in Section 387 of the Bankruptcy Act and Rule 11–40 of the Rules of Bankruptcy Procedure.

The Trustee argues that a grant of jurisdiction would invest this Court with the Authority to grant administrative claim status to the Interim Creditors.

The Trustee points out that the Debtor in Possession in its Application to be Adjudged a Bankrupt prayed for the requested relief pursuant to Rule 11–42(a) of the Bankruptcy Rules, a rule which requires the Court to have jurisdiction. Thus the Trustee argues the Debtor cannot have it both ways. The Debtor cannot deny that this Court has jurisdiction after the termination of the Chapter XI when it asked the Court to take jurisdiction and convert the case from a Chapter XI to a Chapter VII.

The Court disagrees with both parties. First as to the Trustee; in order for this Court to be able to give administrative status to the Interim Creditors, the language of the Plan of Arrangement or the Order must so provide. This is what Section 381 directs. A limited grant of jurisdiction as provided in the Plan would not bring Section 381 into play. Section 381 is not a jurisdiction conferring section. The jurisdiction conferring section is Section 368. Section 368 states:

> The Court shall retain jurisdiction if so provided in the arrangement.

If in fact this Court had unlimited jurisdiction conferred by the Arrangement or Order to adjudicate, and if the Arrangement or Order did not provide specifically what was to be done to Interim Creditors, Section 381 would control and this Court would have to adopt the position of Counsel for the Debtor in Possession.

However, the Arrangement specifically limited the grant of jurisdiction to the "purposes set forth in Section 387 of the Bankruptcy Act and Rule 11–40 of the Rules of Bankruptcy Procedure. The Order Confirming Plan of June 8, 1979 states at D.:

> The Court shall retain jurisdiction in accordance with the Plan of Arrangement until final payment has been made pursuant to such plan.

The Order does not expand the specific limiting language of the Arrangement.

Section 387 deals with alterations or modifications of plans of arrangement and provides for a meeting of all creditors, including those who extended credit after the confirmation, who are affected by the alteration or modification. Those creditors then are allowed to vote on whether to accept or reject the alteration or modification. Rule 11–40 similarly deals with alteration or modification and allows for a voting procedure.

A conversion to Chapter 7 in order to liquidate was not authorized under the Plan of Arrangement. Such a conversion is permitted under Section 377 and Rule 11–42. The Court did not retain jurisdiction for that purpose but only for the purpose of alteration or modification.

If liquidation was desired, the proper procedure for the Debtor in Possession was to attempt to have the Plan modified and agreed to or to file a new Chapter VII. If the Debtor in Possession had filed a new case, the Chapter XI fees and expenses would be general unsecured claims.

The Court recognizes that the conversion to Chapter VII was granted by Order of this Court and that no appeal was taken. The Interim Creditors, however, have been uniquely disadvantaged. With a Plan of record that reserved jurisdiction for the limited purpose of alteration or modification under Section 387, the Interim Creditors could have anticipated liquidation un-

der a new filing or modification under the old Plan. This did not occur, and in fact the Interim Creditors did not have an opportunity to participate in the decision whether to modify therefore. Under these circumstances the Court declines to invoke Section 381.

■ It has often been said that a Court of Bankruptcy should do equity, e. g., *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 246, 84 L.Ed. 281 (1939); *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). In this case the parties that were harmed by the conversion petition were the Interim Creditors, Class D. Had a new case been filed, they would have shared pro-rata with Class E, as they had been treated under the Plan, and Class B. Therefore, in order to do equity in this case, the Court decides that a distribution should be made as if this case were a new filing under a Chapter VII.

Section 65(a) of the Bankruptcy Act states:

Dividends of an equal per centum shall be declared and paid on all allowed claims except such as have priority or are secured.

Those claims that have priority are set forth in Section 64. The first priority is given to costs and expenses of preserving the estate subsequent to filing the petition. These we have denominated Class A claims and they shall be paid in full. The next priority that concerns us is Section 64(a)(4) claims for taxes. The tax claims shall be paid subject to the resolution of any dispute between the Internal Revenue Service and the Trustee. We do not determine whether the tax claims should be further classified between pre-petition taxes and interim taxes and leave that for further resolution, although such a determination should not change the distribution because Class C has priority over Classes B, D and E.

Because there are no other priorities, it is the finding of this Court that the Chapter XI fees and expenses, the claims of the Interim Creditors and the claims of the Chapter XI petition unsecured creditors re-

duced to the amounts respectively provided for them in the Plan, shall share pro-rata in the remaining monies.

By Order of this Court on June 8, 1979, the Disbursing Agent made certain payments under the Plan to general unsecured creditors, taxing authorities and Interim Creditors. Any amount due those creditors by this Order shall be reduced by those amounts already disbursed.

Likewise, inasmuch as some of the Chapter XI expenses have been paid, their pro-rata distributions shall be reduced by the amounts paid. Should it be determined that Class B expenses have been overpaid, then it is the Order of this Court that the parties shall not be required to repay these amounts to the Estate. We leave at rest matters decided and not appealed.

IT IS ORDERED that the Trustee prepare an Order of Distribution in accordance with this Opinion.