**In re CALIFORNIA STEEL COMPANY, Debtor.**

**Bankruptcy No. 80 B 05145.**

United States Bankruptcy Court,
N.D. Illinois.

Nov. 4, 1982.

Mark S. Lieberman, Mary T. Fahey, Rosenthal & Schanfield, Chicago, Ill., for petitioner.

Ivan L. Brownstein, John S. Magiera, Commonwealth Edison Co., Chicago, Ill., for respondent.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action comes to be heard on a petition by California Steel Company (hereinafter referred to as debtor) to disallow certain claims filed by Commonwealth Edison Company (hereinafter referred to as Edison).

There are two claims in question. The first claim was filed on November 4, 1980 in the amount of $107,790.58. The second claim was filed on May 18, 1981 in the amount of $160,524.69. Both claims were filed as priority costs and expenses of administration and are based on a contract between the debtor and Edison for supplying electric service.

The claims stem from the portion of Edison's monthly electric service bill which provides for a minimum demand charge.[1] The minimum demand charges in question were calculated at a rate of $33,709.79 per month from April 29, 1980 (the day following the debtor's Chapter 11 petition) to September 3, 1980 and at a rate of $35,941.55 per month from September 4, 1980 to January 20, 1981 (the date which all electric service ceased). A minimum demand charge is designed to recoup the costs associated with providing plant facilities capable of supplying the quantity of energy at the location desired by the customer.[2] Minimum demand charges result only when a customer's electricity demands drop below certain levels.

The debtor has paid for all electric service, except for the minimum demand charge portion of its monthly bill.[3] Thus, the controversy herein centers on whether Edison's claims, based on the minimum demand charges, are proper costs and expenses of administration. The debtor contends that the minimum demand charge portion of the electric service bill constitutes an executory contract. The debtor further alleges that pursuant to Sections 365(a)[4] and 1123(b)(2)[5] of the Bankruptcy Code, it rejected this purported executory contract informally through certain letters exchanged by the parties in July of 1980, and formally through the debtor's plan of reorganization (confirmed on October 1, 1981). Therefore, the debtor concludes that Edison's claims should be disallowed as ad-

---

1. Under the electric service contract, the charge for the electric service was based on Rate 6L (Large General Service), Ill.C.C. No. 4, as on file with the Illinois Commerce Commission. The minimum demand charge is one of the applicable charges under this rate and is computed as "75 percent of the highest net demand charge billing (computed before the application of this provision) in any month of the 23 months preceding the billing month, less $5,000."

2. See Antioch Milling Co. v. Public Service Co. of Northern Illinois, 4 Ill.2d 200, 207, 123 N.E.2d 302, 306 (1954) ("A demand charge is designed to allocate to a utility's customers their fair portion of those fixed costs which must be incurred by the utility regardless of the amount of power which is actually supplied. It is the price which must be paid for the construction and maintenance of a plant with sufficient capacity to satisfy its customers' demands. Such a charge for the utility's readiness to serve is proper.")

3. In addition to the minimum demand charge, a typical monthly electric service bill of the debtor included items such as monthly customer charge, basic energy charge, peak energy charge, off-peak energy credit, rental, city tax addition, and state tax addition in arriving at the total monthly charge.

4. Section 365(a) provides:

    (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

    11 U.S.C. § 365(a) (1979). The debtor herein has the right to exercise the powers enunciated in Section 365(a), pursuant to Section 1107(a) of the Bankruptcy Code which grants a Chapter 11 debtor-in-possession the rights of a Chapter 11 trustee. 11 U.S.C. § 1107(a) (1979).

5. Section 1123(b)(2) provides:

    (b) Subject to subsection (a) of this section, a plan may—

    (2) subject to section 365 of this title, provide for the assumption or rejection of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of this title;

    11 U.S.C. § 1123(b)(2) (1979).

ministrative expenses as well as general unsecured claims.

■ The first issue is whether the minimum demand charges constitute an executory contract under Section 365 of the Bankruptcy Code. The most widely accepted definition of executory contract is "[a] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973). *See also In re Rovine Corporation*, 6 B.R. 661, 664 (Bkrtcy.W.D.Tenn.1980). Consequently, the crucial factor which establishes the executory nature of a contract is the existence of unperformed mutual obligations at the time of the filing of the bankruptcy petition.

■ On November 2, 1979, Edison contracted to supply all the electricity required by the debtor (up to 16,500 kilowatts of maximum demand) in exchange for payment under Rate 6L, Ill.C.C. No. 4. On April 28, 1980, the date of the debtor's Chapter 11 petition, Edison had the obligation to supply electric service and the debtor had the obligation to pay for the service in accordance with the specified rate. Since both parties had material unperformed obligations on April 28, 1980, this court holds that the entire agreement between the parties (including the minimum demand charges) was an executory contract on that date.

■ Section 365(a) of the Bankruptcy Code states that the trustee (or debtor-in-possession in a Chapter 11) may assume or reject any executory contract. *See* note 4 *supra.* Consequently, the second issue to be decided by this court is whether the debtor rejected the executory contract which existed between the parties.

First, the debtor argues that the minimum demand charge portion of the electric service bill was rejected through correspondence between the parties in July of 1980. The letters in question indicate that the debtor objected to the minimum demand charge, but the letters do not attempt to reject the executory contract explicitly or implicitly. Edison merely agreed to continue electric service until the court resolved the dispute over the minimum demand charges.

Moreover, most courts have found informal rejections to be ineffective. Although the court herein has been unable to find any cases under the Bankruptcy Code, the most recent cases under the prior Bankruptcy Act require an affirmative, formal rejection of executory contracts in reorganization cases. In a recent Seventh Circuit Court of Appeals decision, the court held that a rejection under Chapter XI of the prior Act" must either be by affirmative action pursuant to § 313 or as part of a plan of arrangement under § 357(2)." *In the Matter of Innkeepers of New Castle, Inc.*, 671 F.2d 221, 226 (7th Cir.1982). *See Federal's Inc. v. Edmonton Investment Co.*, 555 F.2d 577, 579 (6th Cir.1977) (same). *See also Rodman v. Rinier (In re W.T. Grant Co.)*, 620 F.2d 319, 321 (2d Cir.1980) ("only a formal rejection pursuant to § 313(1) of the Bankruptcy Act, 11 U.S.C. § 713(1) (1976), is sufficient to disaffirm an executory contract"); *Zelin v. Unishops, Inc.*, 553 F.2d 305, 308 (2d Cir.1977) (same). Accordingly, this court holds that the letters exchanged by the parties in July of 1980 were insufficient to reject the executory contract.[6]

The debtor refers to several cases in support of informal rejection of executory contracts in *liquidation* cases. *See Brown v. Presbyterian Ministers Fund*, 484 F.2d 998 (3d Cir.1973) (executory contract can be assumed by act or oral statements); *Nostromo, Inc. v. Fahrenkrog*, 388 F.2d 82 (8th Cir.1968); *In the Matter of Forgee Metals Products*, 229 F.2d 799 (3d Cir.1956). While

---

6. Note also that Section 365(a) requires court approval for the acceptance or rejection of an executory contract. *See* note 4 *supra.* The debtor did not seek court approval of its purported rejection in July, 1980.

these cases may indicate that reasonable minds may differ on this issue, the court in the case at bar is persuaded by the recent decision of the Seventh Circuit Court of Appeals, requiring affirmative rejection of executory contracts in *reorganization* cases.

Second, the debtor contends that it formally rejected the executory contract through its plan of reorganization, pursuant to Section 1123(b)(2) of the Bankruptcy Code. *See* note 5 *supra.* The debtor's plan of reorganization, which was confirmed October 1, 1981, provides:

VI. PROVISIONS OF REJECTION OF EXECUTORY LEASES AND CONTRACTS

6.1 All leases and contracts which exist between the debtor and any individual or entity, whether such contracts be in writing or oral, which have not heretofore been rejected, assigned or approved by order of this Court, are herein rejected. However, the debtor shall have the right, prior to the effective date of the Plan, to reject any executory lease or contract.

■ This attempted rejection, however, is ineffective as to the minimum demand charge portion of the electric service contract. "An executory contract must be rejected in its entirety or not at all." *In re Rovine Corp.,* 6 B.R. 661, 666 (Bkrtcy.W.D. Tenn.1980). *See also In the Matter of Klaber Brothers, Inc.,* 173 F.Supp. 83, 85 (S.D. N.Y.1959). The debtor accepted a portion of the electric service contract by paying for all electric service other than the minimum demand charges. Consequently, this court holds that the debtor cannot isolate and reject the minimum demand charge portion of the contract.[7]

■ Since the executory contract was not rejected properly, the final issue is whether

Edison's claims constitute a cost and expense of administration.

Section 503(b)(1)(A) of the Bankruptcy Code provides:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

11 U.S.C. § 503(b)(1)(A) (1979). Claims under this subsection "are judged by the *actual value* received by the estate. An administrative expense only qualifies to the extent that it was necessary for the preservation of the estate." *In re Rhymes, Inc.,* 14 B.R. 807, 808 (B.D.Conn.1981) (emphasis added). "It is settled law that a claim arising under an executory contract is entitled to priority 'if the trustee or debtor in possession elects to assume the contract or if he receives benefits under it.'" *Zelin v. Unishops, Inc.,* 553 F.2d 305, 308 (2d Cir. 1977) (quoting *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976); *American Anthracite and Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 124 (2d Cir.1960).

Although it is a proper charge under utility Rate 6L, Ill.C.C. No. 4, the minimum demand charge is merely a means by which Edison can recoup the cost of its plant facilities. *See* note 2 *supra.* Thus, the minimum demand charge *itself* is not an item which tangibly affects or benefits the debtor's estate. Since the minimum demand charge did not provide any actual value to the debtor's estate or assist in the preservation of the debtor's estate, it is not a cost and expense of administration under Section 503(b)(1)(A).[8] Therefore, this court

---

7. In addition, an executory contract is binding on a debtor-in-possession if it receives benefits under the contract. *Rodman v. Rinier (In re W.T. Grant Co.),* 620 F.2d 319, 321 (2d Cir. 1980) (quoting *Zelin v. Unishops, Inc.,* 553 F.2d 305, 309 (2d Cir.1977). By accepting and using the electric services supplied by Edison after the filing of the Chapter 11 petition, the debtor

benefited generally from the *entire* electric service contract. Accordingly, even if the debtor's actions were construed to be an attempt to reject the entire contract, the rejection would still be ineffective.

8. Similarly, the total rental payment under a lease is not an expense of administration when only a portion of the lease premises is actually

holds that Edison's claims against the debtor for the failure to pay the minimum demand charges from April 29, 1980 to January 20, 1981, are general unsecured claims.[9]

Edison is to furnish a draft order in accordance with this opinion within five (5) days.*

used to preserve the assets of the debtor. 3 *Collier on Bankruptcy,* ¶ 503.04, at 503–15 to 16 (15th Ed. 1982) states:

> But as an incident to the problem of the trustee's use and occupation of a landlord's premises as a means of administering the estate or preserving it, is the question of whether or not the expense is a necessary means of preservation to the extent the trustee actually uses and occupies the premises to the benefit of the estate. Thus, the court will scrutinize very carefully to what extent the trustee has made necessary use of the premises and will deny the landlord the full rental value of the property where only a small part of it was occupied by the trustee in preservation of the assets of the debtor. In keeping with this tendency to protect an estate of the debtor from unnecessary expenses to the detriment of the creditors, the court will be inclined to examine closely whether there actually was a necessary use and occupancy by the trustee. In short, the *quantum* of allowance as an expense of administration for use and occupation by the

trustee will be measured by "the reasonable value of such use and enjoyment."

9. Even if the debtor had properly rejected the executory contract, a general unsecured claim would have resulted. *See* 11 U.S.C. § 502(g) (1979). Consequently, the debtor's allegation that Edison was not entitled to any claim stemming from the electric service contract is unfounded, regardless of whether the rejection was effective.

* This decision is entered in compliance with the stay of enforcement until December 24, 1982 of the United States Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the General Order of the United States District Court for the Northern District of Illinois (July 14, 1982), and the decision of the United States Court of Appeals for the Seventh Circuit in *Farmers Union Central Exchange, Inc. v. Hertz,* No. 82–2211 (7th Cir. August 13, 1982).