In re CENTRAL FOUNDRY
COMPANY, Debtor.

Walter P. CROWNOVER,
Trustee, Plaintiff,

v.

ALABAMA GAS CORPORATION and Economic Development Administration, Department of Commerce, An Agency of the United States of America, Defendants.

Bankruptcy No. 81–3522.
Adv. No. 84–0637.

United States Bankruptcy Court,
N.D. Alabama, W.D.

Sept. 11, 1985.

Al L. Vreeland, Tuscaloosa, Ala., for trustee/plaintiff.

Joe E. Cook, Birmingham, Ala., for Alabama Gas Corp.

Leon F. Kelly, Jr., Birmingham, Ala., U.S. Atty., Robert P. Reynolds, Tuscaloosa, Ala., for EDA.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This cause came before the Court on the Trustee's COMPLAINT FOR DECLARATORY JUDGMENT. The facts of this case are not in dispute, and all parties have moved for summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. This memorandum shall constitute the findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

On July 1, 1980, Alabama Gas Corporation (hereinafter called "Alabama Gas") entered into a contract for gas service with Central Foundry Company (hereinafter called "Central Foundry"). Under the Alabama Gas Large Industrial Rate Schedule which was established by the Alabama Public Service Commission, the gas company was entitled to a minimum charge of $500.00 per month regardless of whether any gas was actually consumed by Central Foundry.

On June 15, 1981, Central Foundry filed its Chapter 11 petition. On December 23, 1981, Central Foundry's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code. Also on that date, plaintiff, Walter P. Crownover, Esquire, was appointed Interim Trustee in the case. The Trustee assumed the gas service contract and paid the monthly bills until at the Trustee's request, the gas service was discontinued in July, 1983.

When the foundry was shut down, the monthly gas consumption fell below the minimum charge level. Alabama Gas and the Trustee have stipulated that Central Foundry was billed $2,500.00 in minimum charges for service from July, 1982 to July, 1983 for which no gas was consumed. This total is composed of four $500.00 minimum bill charges for July to September, 1982 and ten $50.00 minimum bill charges from October, 1982 to July, 1983. Because the estate did not need the gas to be supplied

at the high pressure levels required to operate the foundry, the Trustee was able to re-negotiate a lower minimum bill in October, 1982.

In his complaint, the Trustee is attempting to recover the $2,500.00 minimum charge that was paid to Alabama Gas. The Trustee argues that because the minimum bill was not based upon gas which was actually consumed, the $2,500.00 should not be allowed as an administrative expense of the administration of the estate under 11 U.S.C. Section 503(b)(1)(A) (1978). The Trustee further contends that if the minimum charges are expenses of administration, it is entitled to be indemnified by the Economic Development Administration (hereinafter called "E.D.A."). Alabama Gas has asserted the statute of limitation and waiver and estoppel as defenses to the Trustee's claim.

## CONCLUSIONS OF LAW AND APPLICATION TO FACTS

### A. ADMINISTRATIVE EXPENSE PRIORITY

■ Section 503 of the Bankruptcy Code provides in pertinent part:

**Section 503 Allowance of administrative expenses.**

. . . .

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate....

11 U.S.C. Section 503(b)(1)(A) (1978). Claims under 11 U.S.C. Section 503(b)(1)(A) (1978) are judged by the actual value received by the estate. *In re California Steel Co.*, 24 B.R. 185, 188, 10 B.C.D. 512, 514 (Bkrtcy.N.D.Ill.1982); *In re Rhymes, Inc.*, 14 B.R. 807, 808, 8 B.C.D. 636, 637, 5 C.B.C.2d 478, 480 (Bkrtcy.D.Conn.1981) (cited with approval in *In re Airlift Int'l, Inc.*, 761 F.2d 1503 (11th Cir.1985)).

In the case of *In re O.P.M. Leasing Servs., Inc.*, 23 B.R. 104 (Bkrtcy.S.D.N.Y.

1982), Bankruptcy Judge Burton R. Lifland aptly stated:

Section 503(b)(1)(A) defines administrative expenses as the actual and necessary costs and expenses of preserving the estate. It is well-established that those expenses incurred to preserve the estate for the benefit of *all* creditors are compensable as administrative expenses. *See, e.g., In re Meyers, Inc.*, 15 B.R. 390, 392 (Bkrtcy.S.D.Cal.1981) (emphasis added); *In re Lee*, 3 B.R. 15, 17 (Bkrtcy.N.D.Ga.1979). Where a creditor incurs expenses primarily in its own interest, this creditor is not entitled to a priority administrative claim. *See, e.g., In re MCK, Ltd.*, 14 B.R. 518, 520 (Bkrtcy.D.Col.1981).

In addition, the wording of Section 503(b)(1)(A) defining administrative expenses as those that are "actual" and "necessary" limits the scope of these expenses. These modifiers must be narrowly construed, *see* 3 *Collier on Bankruptcy* Parag. 503.04 at 503–16 (15th Ed. 1982), in order to keep fees and administrative expenses at a minimum so as to preserve the estate for the benefit of all its creditors. *See Otte v. U.S.*, 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974). Therefore, courts analyze the impact of these expenses to insure that the expenses did in fact confer actual value on the estate as a whole. *See, e.g., In re Rhymes, Inc.*, 14 B.R. 807, 808 (Bkrtcy.D.Conn.1981); *In re McK* (sic), 14 B.R. at 520.

*In re O.P.M. Leasing Servs. Inc.*, 23 B.R. 104, 121 (Bkrtcy.S.D.N.Y.1982).

In a similar case concerning demand charges for electric service, the Bankruptcy Court for the Northern District of Illinois has already addressed the issue of whether demand charges are allowable as an administrative expense. In the case of *In re California Steel Co.*, 24 B.R. 185, 10 B.C.D. 512 (Bkrtcy.N.D.Ill.1982), Judge Fredrick J. Hertz concluded that because the demand charges were designed to recoup the high fixed costs associated with supplying electricity to large industrial

users and because such charges did not provide any actual value to the debtor's estate, they were not entitled to priority under 11 U.S.C. Section 503(b)(1)(A) as a cost of administration.

Similarly, because the estate did not use any gas for which it was billed $2,500.00 and because the minimum bill is designed to recoup the utility's fixed costs, this Court must conclude, as did the *California Steel* court, that such demand charges are not entitled to priority under 11 U.S.C. Section 503(b)(1)(A) (1978) as a cost of administration. Such charges benefit only the gas company and do not benefit the estate in any way. *See In re California Steel Co.,* 24 B.R. 185, 10 B.C.D. 512 (Bkrtcy.N.D.Ill.1982).

The Court notes that the persuasiveness of the *California Steel* case is enhanced by the fact that it involved a debtor in possession in the "reorganization mode" while Central Foundry is in the "liquidation mode" in the instant case. The case for allowing a charge for the potential to supply gas is stronger in the "reorganization mode" since the continued operation of the business is contemplated which is not so in the "liquidation mode"; yet the *California Steel* court denied administrative expense priority even in the "reorganization mode."

Alabama Gas has attempted to distinguish the *California Steel* case on several grounds. The gas company argues that demand charges under Illinois law are somehow different from those allowed under the Alabama utility laws. The Court must reject any such distinction since the allowance of claims is a question of federal law for the bankruptcy judge to determine. *See generally* 3 *Collier on Bankruptcy* Section 503.03 (15th Ed.1985). As the Supreme Court stated in *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946):

> In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits. *Erie R.R. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188], has no such

implication .... [B]ankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims should be allowed under equitable principals.

329 U.S. at 162–63, 67 S.Ct. at 240 (footnotes omitted).

The Court's conclusion that the minimum charges are not costs of administration is further supported by a recent opinion of the Eleventh Circuit Court of Appeals. In the case of *In re Airlift Int'l, Inc.,* 761 F.2d 1503 (11th Cir.1985), the following passage clearly illustrates that not all postpetition obligations of the estate give rise to a claim entitled to an administrative expense priority under 11 U.S.C. Section 503(b)(1)(A) (1978):

> While the breach of an executory contract or unexpired lease assumed under this section 365 clearly results in an administrative expense claim, contracts initially entered into during reorganization, in order to qualify under section 503(b), must involve an actual necessary cost or expense of preserving the estate. As noted by the court in *In re Chugiak,* 18 B.R. 292 (Bkrtcy.D. Alaska 1982):
>
> > The reason why Congress chose not to include newly entered (and thus un-assumed) contracts within the literal scope of Section 365(g), and thus in effect returned the law to its pre–1967 state, also seems evident. By requiring the court to determine the reasonable necessity of the newly entered contract under Section 503(b), Congress has insured some judicial control over the determination of what executory contracts will be granted administrative expense priority. The Code, in order to streamline reorganization procedure, allows a debtor in possession to enter into contracts in the ordinary course of business without seeking court approval. Thus, contracts initially entered into during reorganization, unlike contracts assumed during reorganization, will not have under-

gone court scrutiny. By limiting automatic administrative expense treatment under Section 365(g) to assumed contracts, and by requiring initially entered contracts to qualify under Section 503(b) in order to be granted an administrative expense priority, Congress has insured both similar treatment and similar procedural safeguards for these fundamentally similar obligations.

*Id.* at 297–98 (footnotes omitted).

*In re Airlift Int'l, Inc.,* 761 F.2d 1503, 1509 n. 5 (11th Cir.1985).

### B. WAIVER AND ESTOPPEL

■ The parties may not by contract create an administrative expense priority beyond the scope which was intended by Congress, *see Matter of Schatz Federal Bearings Co.,* 5 B.R. 549, 6 B.C.D. 749 (Bkrtcy.S.D.N.Y.1980), nor may equitable considerations be relied upon to vary the statutory provision. *See In re REA Express, Inc.,* 442 F.Supp. 71 (S.D.N.Y.1977) *aff'd,* 591 F.2d 1331 (2nd Cir.1978). The Court must, therefore, reject Alabama Gas' defenses of waiver and estoppel.

The Court finds support by analogy for this holding in the following passage from *Collier on Bankruptcy* discussing the allowance of rent as an allowable cost of administration under 11 U.S.C. Section 503(b)(1)(A) (1978) where the Trustee or debtor in possession has mistakenly paid the contract rent when only a portion of the premises has benefitted the estate:

If prior to assumption or rejection the trustee or debtor in possession mistakenly continues to pay rent as such without condition and it is so accepted, and the lease is thereafter rejected, the general rule is that the difference, if any, between the rent reserved and the value of use and occupancy may be recovered, since the lessor dealing with a court officer in a reorganization must be charged with notice of the provisional character of all such transactions.

2 *Collier on Bankruptcy* 365.03[2] (15th Ed.1985) (citing *Palmer v. Palmer,* 104 F.2d 161 (2nd Cir.1939), *cert. denied,* 308 U.S. 590, 60 S.Ct. 120, 84 L.Ed. 494 (1939)). Thus, even though the Trustee has already paid the minimum charges, he should not now be estopped from recovering them.

### C. STATUTE OF LIMITATIONS

Lastly, the Court rejects Alabama Gas' argument that the Trustee's suit is barred by the statute of limitations of Sections 108(a), 546(a), 549(d), and 550(e) of the Bankruptcy Code. The Court determines that none of these limitation provisions is applicable by their own terms.

■ *1. Section 108(a).* Section 108(a) of the Bankruptcy Code deals only with causes of action which the debtor may have commenced which became property of the estate for the trustee to prosecute by virtue of the debtor's filing a petition under title 11. The Trustee's cause of action in the instant suit, clearly arose post-petition; and it could not have been commenced by Central Foundry prior to its filing its Chapter 11 petition. See 11 U.S.C. Section 108(a) (1978). Therefore, the two-year statute of limitation provision of Section 108(a) of the Bankruptcy Code is inapplicable to the instant case. Further, because the Trustee's cause of action arises under 11 U.S.C. Section 503(b)(1)(A) (1978) and not under state law, the Court determines that there is no applicable non-bankruptcy statute of limitation.

■ *2. Section 546(a).* The limitation provision of Section 546(a) is inapplicable because the instant case is not "[a]n action or proceeding under section 544, 545, 547, 548, or 553 of [the Bankruptcy Code.]" 11 U.S.C. Section 546(a) (1978).

■ *3. Section 549(d).* Similarly, the limitation provisions of Section 549 of the Bankruptcy Code are applicable only to unauthorized transactions and those which were "authorized only under section 303(f) or 542(c) of [the Bankruptcy Code.]" 11 U.S.C. Section 549(a) (1978). The payments for electrical service in this case were authorized but not under either section 303(f) or 542(c).

■ *4. Section 550(e).* Lastly, the statute of limitations found in 11 U.S.C. Section 550(e) (1978) is a limitation on the liability of a transferee of "a transfer that is avoided under section 544, 545, 547, 548, 549 or 724(a) of [the Bankruptcy Code.]" 11 U.S.C. Section 550(a), (e) (1978). Since the Trustee's cause of action is not based upon any of the sections listed in 11 U.S.C. Section 550(a) (1978), the limitation provision of 11 U.S.C. Section 550(e) (1978) is inapplicable.

Having determined that no statute of limitations is applicable, the Court concludes that the Trustee may prosecute the instant action in carrying out his duties under 11 U.S.C. Section 704 (1978) anytime before the closing of the case. The Trustee's suit is, therefore, not barred; and the Trustee's MOTION FOR SUMMARY JUDGMENT is due to be **GRANTED.**