In re Leon R. and Shirley M. KEARING, Debtors.

John W. GUINEE, Jr., Plaintiff,

v.

Alfred L. TOOMBS, Defendant.

Bankruptcy No. 86–00913.
Adv. No. 91–0016.

United States Bankruptcy Court,
District of Columbia.

July 8, 1994.

Mark W. Foster, Blair G. Brown, Julie A. Mack, Washington, DC, for plaintiff.

Alfred L. Toombs, Washington, DC, pro se.

## DECISION REGARDING DISGORGEMENT OF ATTORNEY'S FEES PAID TO COUNSEL

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This decision addresses the issue of whether the trustee may recover interim compensation paid to the debtors' former counsel under Bankruptcy Code Sections 330 and 331, 11 U.S.C., due to the administrative insolvency of the estate. Pending before the court is the Motion to Dismiss filed by the Defendant, Alfred Lawrence Toombs ("Toombs"), and the Motion for Summary Judgment filed by the Plaintiff, John W. Guinee, Jr., the trustee herein. For the reasons that follow, the court concludes that the trustee may recover interim compensation paid to Toombs in order to effectuate a pro rata distribution among Chapter 11 administrative claimants, but defers the determination of the amount that is recoverable until the trustee files an Affidavit setting forth the total amount of administrative claims against the estate, the availability of assets to pay such claims, and the amount by which Toombs received more than his pro rata share as a Chapter 11 administrative claimant.

### Facts

The debtors in this bankruptcy action, Leon and Shirley M. Kearing, filed a petition under Chapter 11 of the Bankruptcy Code on December 10, 1986. On January 20, 1987, the court entered an order approving the application of the debtors to retain Toombs as their attorney, and on December 3, 1987, the court entered an order granting Toombs leave to withdraw his appearance. Thereafter, on December 15, 1987, the Plaintiff in this action, John W. Guinee, Jr., was appointed as Chapter 11 trustee. On March 29, 1991, the case was converted to a Chapter 7 proceeding.

During the course of this bankruptcy proceeding, Toombs filed three applications for compensation and a motion for reconsideration of an order awarding supplemental compensation. Pursuant to the first application for interim compensation, the court entered an order on September 10, 1987, awarding Toombs a total of $24,013.59 for fees and expenses. Pursuant to a second application for interim compensation, the court entered an order on January 22, 1988, awarding Toombs fees and expenses in the amount of $16,382.46. As a result of these orders, Toombs was paid the total sum of $40,396.05.

On May 9, 1988, Toombs filed a third application for supplemental allowance of compensation, and a motion for reconsideration of the January 22, 1988, order, which reduced by $4,007.25 the amount requested by Toombs in his second fee application. On November 22, 1988, the court entered an order modifying the January 22, 1988, order, granting Toombs' motion for reconsideration, and awarding him the balance of compensation sought in his second fee application. The court also entered an order awarding Toombs $11,455.76 in response to his third application for supplemental allowance of compensation. Toombs has not been paid either of these sums.

On February 27, 1991, the trustee filed this adversary proceeding seeking to recover the funds received by Toombs as interim compensation. The trustee alleges that there are insufficient unencumbered funds in the estate to pay all administrative claims in full. Due to the administrative insolvency of the bankruptcy estate, the trustee alleges that he is required under 11 U.S.C. § 726(b) to pay all administrative claims a pro rata share of the unencumbered or general funds of the estate. Accordingly, the trustee seeks to recover those sums paid to Toombs as interim compensation until a pro rata share of all allowed administrative claims can be determined.

On April 4, 1991, Toombs filed a motion to dismiss the trustee's complaint on the grounds that the Bankruptcy Code does not provide a cause of action for the recapture of compensation and expenses paid pursuant to "lawful and final court orders"; that the recovery of any sums paid more than three years prior to the filing of the complaint is barred by the statute of limitations; that any liability Toombs may have must be limited to payments actually made from funds of the debtors' estate; and that any recapture of compensation and expenses must be limited to Toombs' pro rata share of any actual Chapter 7 administrative expense deficiency. On April 15, 1991, the trustee filed an opposition to Toombs' motion to dismiss and a motion for summary judgment. Conceding that there is a factual dispute as to whether $7,561.23 of the $40,396.05 paid to Toombs was paid out of estate funds, the trustee seeks partial summary judgment in the amount of $32,834.82. In support of his motion for summary judgment, the trustee argues that interim compensation orders are interlocutory in nature, subject to amendment or modification at any time during the pendency of the bankruptcy proceeding; that in the case of an administrative insolvency, previously paid administrative expenses are subject to disgorgement in order to effectuate a pro rata distribution among administrative claimants; that the interim compensation received by Toombs is subject to immediate disgorgement; and that Toombs' statute of limitations defense is without merit.

*Statute of Limitations*

In his motion to dismiss, Toombs argues that the recovery of any sums paid to him more than three years prior to the filing of the complaint is barred by the statute of limitations. Toombs relies upon section 108(a) of the Bankruptcy Code, which provides that if applicable nonbankruptcy law fixes a period for the debtor to commence an action, and the period has not expired before the date of the filing of the petition, the trustee may commence such an action prior to the end of such period, including any suspension of such period, or two years after the order for relief, whichever is later. Toombs claims that federal law contains no express limitation period for an action of this type; and, therefore, the applicable local statute of limitations is "borrowed."

Under D.C.Code § 12–301(8), any action for which no other period of limitations is prescribed must be brought within three years. Toombs contends that under D.C. law, this general three year limitation period is applicable to an action for the refund of monies paid, and accrues when the money is actually paid. Accordingly, Toombs argues that the three-year statute of limitations applies, and the trustee cannot recover any payments made more than three years prior to the filing of the complaint in this adversary proceeding, or prior to February 27, 1988. In an Affidavit filed with his motion to dismiss, Toombs states that the only payment he received after February 27, 1988, was a $15,221.23 payment received on April 27, 1988.

The trustee argues that Toombs' statute of limitations defense is without merit. The trustee asserts that the purpose of section 108(a) is to preserve a debtor's rights in bringing an action or doing some other acts based upon events that occurred pre-petition. Because the payments received by Toombs were made post-petition, the trustee argues that section 108(a) does not apply. Further, the trustee argues that because his action would not have arisen but for the filing of the bankruptcy, the action would be timely at any time before the close of the bankruptcy case.

The court agrees that the statute of limitations defense asserted by Toombs is without merit. The cause of action brought by the trustee in this case is similar to that brought by the trustee in *In re Central Foundry Co.*, 62 B.R. 52, 54 (Bankr.N.D.Ala.1985), where the trustee brought an action against the Alabama Gas Corporation for the recovery of minimum service charges paid by the debtor during a period in which no gas was consumed. The court held that the minimum charges were not costs of administration, and that the trustee was entitled to recover the amount paid by the debtor. *Id.* at 55.

Further, the court rejected Alabama Gas Corporation's argument that the trustee's suit was barred by the statute of limitations of sections 108(a), 546(a), 549(d), and 550(e) of the Bankruptcy Code. *Id.* at 56. The court then noted that section 108(a) deals only with causes of action which the debtor may have commenced which became property of the estate for the trustee to prosecute by virtue of the debtor's filing a petition under title 11. *Central Foundry,* 62 B.R. at 56. However, the court distinguished the trustee's action in *Central Foundry* on the grounds that it clearly arose post-petition and could not have been commenced by the debtor prior to its filing its Chapter 11 petition. Accordingly, the court concluded that the two-year statute of limitations of section 108(a) did not apply.

Further, the court determined that because the trustee's cause of action arose under section 503(b)(1)(A) of the Bankruptcy Code, and not under state law, there was no applicable nonbankruptcy statute of limitations. Finding that the statute of limitations of sections 546(a), 549(d) and 550(e) were also inapplicable, the court concluded that the trustee could prosecute the action in carrying out his duties under section 704 anytime before the closing of the case. *Id.* at 57.

Similarly, the cause of action brought by the trustee in this case arose post-petition, when it appeared that there would be an administrative insolvency and that Toombs, by virtue of being paid interim compensation, may have received a greater distribution as an administrative claimant than he is entitled to receive under section 726(b). Accordingly,

section 108(a) does not apply in this case. Further, because the trustee's cause of action arises under section 726(b) of the Bankruptcy Code, which provides for the pro rata payment of administrative claims, and not under state law, the three-year statute of limitations under D.C.Code § 12–301(8) does not apply. Therefore, the court concludes that this action is not barred by any statute of limitations, and that the trustee has until the close of the bankruptcy case to prosecute such actions. To hold otherwise would frustrate this court's ability to assure equality amongst administrative claims of professionals.

*Legal Basis for Recovery of Interim Compensation*

■ Toombs also argues that there is no statutory basis in the Bankruptcy Code for the recovery of compensation and expense reimbursements paid pursuant to "lawful and final court orders." While recognizing the bankruptcy court's inherent power to impose "holdback" conditions upon interim compensation awards, Toombs notes that the first and second orders pursuant to which he received compensation did not contain any such "holdback" provisions. Toombs argues that he was entitled to rely upon the finality of the first and second orders, and to conduct his law practice accordingly.

Toombs also argues that section 726(b), which provides for the "super-priority" of Chapter 7 administrative expenses where there has been a conversion from Chapter 11, is limited to the distribution of *available funds* after conversion to Chapter 7. Thus, Toombs argues that where Chapter 11 administrative expenses have already been approved and paid prior to the conversion of the case, those funds are no longer assets of the estate *available* to pay "super-priority" Chapter 7 administrative expense claims or for pro ration of Chapter 11 administrative expenses. Toombs argues that section 726(b) does not authorize or permit the recapture of administrative expenses approved and paid prior to conversion for payment of Chapter 7 administrative expenses or for pro ration among other Chapter 11 administrative expense claimants. Further, Toombs

distinguishes the cases relied upon by the trustee on the grounds that none of the decisions actually authorized the post-conversion recapture and redistribution of administrative expenses.

Toombs relies upon *In re IML Freight, Inc.*, 52 B.R. 124, 135 (Bankr.D.Utah 1985), where the court rejected a proposal to pay the Chapter 11 attorneys' compensation in full with priority over the Chapter 7 administrative expenses, and stated as follows:

> [I]f a Chapter 11 case is converted to a case under Chapter 7, Section 726(b) provides for a superpriority for administrative expenses incurred after conversion, and if there are insufficient funds to pay all of the Chapter 11 administrative expenses in full, all claimants must share pro rata in the *available funds.* [emphasis added].

Further, relying upon *In re Kaleidoscope of High Point, Inc.*, 56 B.R. 562 (Bankr. M.D.N.C.1986) and *In re Fashion Spear, Inc.*, 15 B.R. 137 (Bankr.W.D.Pa.1981), Toombs argues that payments made during the pendency of a Chapter 11 case in satisfaction of allowed administrative expenses are final, and cannot be "reeled in" for distribution upon conversion to Chapter 7. In further support of this argument, Toombs also quotes the following language from *In re Reef Petroleum Corp.*, 99 B.R. 355, 360 (Bankr.W.D.Mich.1989):

> Payments made during an ongoing Chapter 11 should not be 'reeled in.' . . . [O]nce the plan is aborted, and a case is converted to Chapter 7, the parties must revert to Chapter 7 to distribute *any remaining property of the estate.* [emphasis added].

Thus, Toombs argues that the trustee's complaint fails to state a cause of action upon which relief may be granted.

■ The fatal flaw in Toombs' argument, as noted by the trustee in his motion for summary judgment, is that an order granting interim compensation is not a final order. Rather, interim allowances are interlocutory in nature, and are "always subject to the court's re-examination and adjustment during the course of the case." *In re Callister*, 673 F.2d 305, 307 (10th Cir.1982) (quoting 2 *Collier on Bankruptcy* par. 331.03 (15th ed. 1981)). *See also, In re Vermont Real Estate Investment Trust*, 26 B.R. 905, 909 (Bankr. D.Vt.1983) (noting that payment of interim compensation is subject to the court's re-examination and adjustment during the course of the case, the bankruptcy court conditioned its order granting interim compensation by requiring repayment of a pro rata share of the sums awarded in the event of an administrative · insolvency); *In re American International Airways, Inc.*, 47 B.R. 716, 722 (Bankr.E.D.Pa.1985) (interim compensation is refundable to the estate if it becomes necessary to pro rate administrative expenses).

The fact that the first and second orders granting interim compensation in this case did not contain "holdback" provisions does not change the interlocutory nature of the orders. Toombs himself recognized the interlocutory nature of the orders as shown by the manner in which he filed an appeal from one of the orders. Under Bankruptcy Rule 8001(b), an appeal from an interlocutory order is taken by filing a notice of appeal, accompanied by a motion for leave to appeal prepared in accordance with Bankruptcy Rule 8003. Toombs filed a motion for leave to appeal from the January 22, 1988, order pursuant to Bankruptcy Rules 8001(b) and 8003(a), thereby acknowledging the interlocutory nature of the order. Thus, Toombs cannot now claim that the absence of a "holdback" provision in the orders led him to believe that the orders were final.

The cases Toombs relies upon in support of his argument that payments already made to administrative creditors cannot be "reeled in" for distribution upon conversion are distinguishable on the grounds that they involve payments made pursuant to a confirmed plan of reorganization. In *In re Kaleidoscope*, 56 B.R. at 563, the court confirmed the debtor's plan of reorganization on February 22, 1985. An order in aid of consummation was entered on March 11, 1985, and an order of substantial consummation was entered on April 5, 1985. However, the debtor's examiner and accountants were not paid their final compensation in the Chapter 11 proceeding due to a lack of funds. Consequently, the examiner and the accountants filed a motion to compel payment of professional fees in con-

summation of the plan, or to convert the case to a Chapter 7 liquidation. *Kaleidoscope*, 56 B.R. at 563. Finding, *inter alia*, that there were no funds available to pay such administrative expenses, the court entered an order converting the case to a Chapter 7 liquidation case. *Id.* at 564.

After conversion, the examiner and accountants filed a motion requesting the recapture of funds disbursed under the plan of reorganization as payment for professional fees and to secured creditors. Expressing a strong belief that a confirmed plan as implemented should stand, the court concluded that funds disbursed during a Chapter 11 case pursuant to a confirmed plan of reorganization should not be "reeled in" during the Chapter 7 case for redistribution to creditors who would have received payment under the plan had the debtor been able to successfully reorganize. While noting that there is no suggestion in the Bankruptcy Code that the court should require creditors to return funds and redistribute them to different creditors, the court also recognized that the Code does not prohibit such an action if necessary on equitable grounds. *Kaleidoscope*, 56 B.R. at 566. However, the court found that recapture was not appropriate in the instant case where the funds were disbursed pursuant to a confirmed plan, and an order of substantial consummation had been entered. *Id.*

In *In re Fashion Spear, Inc.*, 15 B.R. 137 (Bankr.W.D.Pa.1981), the debtor filed a petition under Chapter XI of the Bankruptcy Act. The debtor's Plan of Arrangement was confirmed on June 8, 1979, but the debtor subsequently defaulted in the terms of the plan and the case was converted to Chapter VII on March 31, 1980. However, prior to conversion, some of the administrative claims were paid pursuant to a court order entered on August 10, 1979. After conversion, a dispute arose regarding the distribution of funds after the payment of Chapter VII administrative expenses. *Id.* at 138. Finding that the Bankruptcy Act did not provide a priority for Chapter XI fees and expenses, the court held on an equitable basis that such creditors should share pro rata with two groups of unsecured creditors. *Fashion Spear*, 15 B.R. at 140. While the court provided for a setoff of funds received against funds available as the pro rata share, it specifically ordered, without analysis, that the Chapter XI fees and expenses would not be required to be returned if there were any overpayment in terms of the pro rata share. *Id.*

In *In re Reef Petroleum Corp.*, 99 B.R. 355, 360 (Bankr.W.D.Mich.1989), the court merely agreed that payments made under a plan of reorganization could not be "reeled in", stating that as long as payments are made as required by the plan, and the plan remains in effect, a party can rely on the payments as being final. The case does not involve payments made pursuant to an order granting interim compensation.[1]

In this case, the trustee seeks to recover payments made pursuant to interim fee applications under section 331, not pursuant to a confirmed plan of reorganization.[2] While

---

[1]. The remaining cases relied upon by Toombs are also distinguishable on the grounds, *inter alia*, that they involved a confirmed plan of reorganization. *See, In re T.S.P. Industries, Inc.*, 117 B.R. 375 (Bankr.N.D.Ill.1990) (citing cases that hold that confirmed Chapter 11 plans do not become ineffective as a result of conversion, and property distributed under a plan could not be redistributed, court held conversion of a Chapter 11 case would not be in the best interests of the creditors because the Chapter 7 trustee would not have any assets to distribute to the creditors); *Matter of Iberis International, Inc.*, 72 B.R. 624 (Bankr.W.D.Wis.1986) (dismissal of Chapter 7 case filed by debtor while its Chapter 11 case was pending, and conversion of the Chapter 11 case was in the best interests of all parties where, *inter alia*, the debtor's confirmed plan provided that if the debtor was unable to comply with the plan's payment schedule, the creditors' committee would be able to petition the court for conversion, and the debtor was unable to fulfill the requirements of the confirmed plan); *In re Chattanooga Wholesale Antiques, Inc.*, 67 B.R. 899 (Bankr.E.D.Tenn.1986) (court concluded that trustee could not recover payments made to a bank shortly after the commencement of the case and before confirmation of the plan, as well as payments made pursuant to the confirmed plan, where the Chapter 11 plan, which erroneously treated the bank's claim as secured, was confirmed and continued for long past the time allowed to file a complaint for revocation of confirmation).

[2]. A plan of reorganization was never confirmed in this case.

parties must be able to rely on the permanency of a plan of reorganization, *see Kaleidoscope,* 56 B.R. at 565–66, the same cannot be said of orders awarding interim compensation, which are not final orders and are subject to the court's re-examination and adjustment during the course of the case.

Recognizing the interlocutory nature of orders granting interim compensation, many courts have provided that interim payments made pursuant to such orders may be subject to disgorgement in the event of an administrative insolvency. *See, e.g., In re Gherman,* 114 B.R. 305, 307 (Bankr.S.D.Fla. 1990); *In re Wabash Valley Power Ass'n, Inc.,* 69 B.R. 471, 475 (Bankr.S.D.Ind.1987); *In re C & J Oil Co. Inc.,* 81 B.R. 398, 403 (Bankr.W.D.Va.1987). In *In re IML Freight, Inc.,* 52 B.R. 124 (Bankr.Utah 1985), the court denied the trustee's motion for immediate payment of Chapter 11 professional fees where it was clear that there would be insufficient funds to satisfy all administrative claims. The court stated as follows:

> The question is whether the Court should now, in the face of the estate's certain inability to pay all Chapter 11 administrative expenses in full, authorize full payment to the trustee's accountants and attorneys, and the other Chapter 11 professionals, knowing that some measure of such fees will have to be repaid in order to effect a pro rata distribution with other claimants.

*In re IML Freight,* 52 B.R. at 139. Thus, while the court did not order the recapture of interim payments of professional fees because such payments were not allowed in the first instance, the court did recognize its authority to require the repayment of such fees in order to effect a pro rata distribution with other claimants. *See also, In re Energy Co-op., Inc.,* 55 B.R. 957 (Bankr.N.D.Ill.1985) (where it was determined that there were sufficient assets in the estate to pay priority claims, court allowed interim payment of 25% of allowed professional fees, noting that an inaccurate determination of whether there will be sufficient assets in the estate to cover priority claims will not ultimately harm any claimholder in light of the fact that fees improvidently granted will be returned to the estate for disbursement to such a claimholder).

As stated above, the absence of conditional language in the orders granting interim compensation in this case does not change the interlocutory nature of the orders, of which nature Toombs was aware as evidenced by his own actions in moving for leave to appeal from one of the orders. Although section 726(b) does not specifically authorize the recapture of administrative payments made pursuant to orders allowing the payment of interim compensation, such authority can be found in section 105, which provides the bankruptcy court with the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [the Bankruptcy Code]." Thus, the court concludes that it has the power to order the disgorgement of professional fees paid pursuant to orders granting interim compensation under section 331, in order to carry out the provisions of section 726(b) and ensure that administrative claimants are paid their pro rata share of estate assets.

■ Professional fees allowed pursuant to § 503(b) are distinct from administrative expenses paid by the trustee in the ordinary course of business pursuant to § 363(c)(1). Unlike professional fees, payments made by the trustee in the ordinary course are not subject to court approval, can be paid immediately and will not be subject to any pro-rata reductions. *In re Telesphere Communications, Inc.,* 148 B.R. 525, 530, 531 (Bankr. N.D.Ill.1992) (citing *In re Vernon Sand & Gravel, Inc.,* 109 B.R. 255, 257 (Bankr. N.D.Ohio 1989)); *In re Mr. Gatti's, Inc.,* 164 B.R. 929, 945 (Bankr.W.D.Tex.1994) (holders of payments made in ordinary course of business may be paid without court approval and such payments may not be later disgorged). Thus, the court need not be concerned that disgorgement of professional fees would render debtors unable to retain employees, hire service providers or maintain accounts on the basis that those entities would fear that the money they receive would be subject to disgorgement. Professionals seeking compensation from the bankruptcy estate do so at

the risk that the estate will not have sufficient funds to satisfy their claims. To hold otherwise would be to ignore the plain language of § 726(b) and to unjustly award certain administrative claims of professionals a "superpriority" status that is not mandated by the Code.

Toombs also argues that any recapture of interim compensation already paid must be limited to the pro rata share of any Chapter 7 administrative expense deficiency, the qualification of which must await the final administration of any Chapter 7 case. Toombs contends that unless and until there is a showing of an actual, dollar-specific Chapter 7 administrative expense deficiency, he cannot be required to contribute his pro rata share of such deficiency. On the other hand, the trustee contends that the favorable posture of Toombs, by having received greater than a pro rata share of his Chapter 11 administrative claim, is analogous to a creditor who has received a preferential transfer, as defined in 11 U.S.C. § 547(b). Under section 547(b), a creditor is required to return the full amount of the preferential payment to the estate and await distribution from the estate after his pro rata share of the estate funds has been determined. Accordingly, the trustee argues that Toombs should be required to return to the estate those funds he has received in payment of interim compensation until his pro rata share in payment of his Chapter 11 administrative claim is determined.

■ The court rejects the Toombs' argument that any recapture of interim compensation must be limited to contribution of any Chapter 7 administrative deficiency. Section 726(b) provides for the pro rata distribution of Chapter 11 administrative claims, as well as Chapter 7 administrative claims, although Chapter 7 administrative claims receive first priority. Thus, there is no basis for limiting the recapture of interim compensation to contributions to Chapter 7 administrative deficiencies when there is also a Chapter 11 administrative deficiency.

■ However, the court also rejects the trustee's argument that Toombs' position is analogous to that of a creditor that received a preferential payment. Before avoiding a transfer of property under section 547(b), a trustee must show that the creditor received a preference. Similarly, before the trustee in this case may recover any interim compensation from Toombs, he must show that there is an administrative deficiency, and that Toombs received more than his pro rata share of any distribution to Chapter 11 administrative claimants. Accordingly, before the court will enter an order requiring Toombs to pay back any funds received as interim compensation, the trustee must file an Affidavit showing the amounts of any administrative deficiencies, the amount of available estate funds, and the amount by which Toombs received more than his pro rata share of any distribution of estate funds. An appropriate order follows.