**In the Matter of Richard Leon COTE, Sr., Debtor.**

**No. BK–68–251–ND.**

United States District Court, D. Maine, N. D.

May 11, 1970.

John J. Flaherty, Christopher A. Moen, Jr., Portland, Me., Max S. Cohen, Bangor, Me., for petitioner.

James R. Flaker, Portland, Me., for trustee in Ch. XIII proceedings.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This matter comes before the Court on the petition of the Liberty Loan Corporation for review of an order of the Referee in Bankruptcy for the Northern Division of this Court, dated March 20, 1970, granting the Trustee's request for reconsideration of the allowance of the petitioner's claim in the Chapter XIII wage earner proceeding of Richard Leon Cote, Sr.

The facts before the Referee were stipulated by the parties. It was further stipulated that the sole legal issue before the Referee was whether or not Section 57(k) of the Bankruptcy Act, 11 U.S.C. § 93(k), was applicable in a pending Chapter XIII proceeding.

The Referee's opinion, a copy of which is annexed hereto, fully states the facts, and, in the view of this Court, is entirely correct in its conclusions as to the law applicable in this case. This Court therefore adopts the opinion of the Referee as its own, and incorporates it herewith. It is, therefore,

Ordered, adjudged and decreed that the order of the Referee be, and it hereby is, affirmed.

## APPENDIX

### IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE DISTRICT OF MAINE
### NORTHERN DIVISION

In the Matter of

RICHARD LEON COTE, SR.

Debtor

In Proceedings for a Wage Earner Plan

No. BK–68–251–ND

### OPINION AND ORDER

Richard Leon Cote, Sr. filed a Chapter XIII petition and plan with this court on June 14, 1968. In due course, an order was entered confirming the debtor's proposed wage earner plan on June 26, 1968. By order of this court dated August 15, 1968, the proof of claim of Liberty Loan Corporation of Cumberland, filed on July 15, 1968, was allowed. The debtor's Chapter XIII plan remains pending in this court. The Chapter XIII trustee has now applied for an order authorizing reconsideration of the allowance of the claim of Liberty Loan Corporation of Cumberland under the provisions of § 57(k) of the Bankruptcy Act.

It is agreed between the parties that the sole legal issue before the court at this time is whether or not § 57(k) of the Bankruptcy Act is applicable in a pending Chapter XIII proceeding. It is further agreed that the resolution of this issue will be without prejudice to any other claims or defenses by either of the parties.

### DISCUSSION OF APPLICABLE LAW

Section 57(k) of the Bankruptcy Act reads as follows:

"Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed." [1]

It should be emphasized, at the outset, that the issue before this court is not whether or not the claim of Liberty Loan Corporation should or should not be reconsidered, but whether or not § 57(k) is at all applicable in Chapter XIII proceedings.

Counsel for Liberty Loan Corporation bases his argument that § 57(k) is inapplicable in Chapter XIII proceedings on the following grounds:

1. Section 57(k) is generally inapplicable in Chapter XIII proceedings because it is contextually inconsistent with the rehabilitative function of Chapter XIII as compared with the liquidation objectives of Chapters I–VII.

---

1. 11 U.S.C. § 93(k).

2. Section 57(k) may not be invoked, *in this instance,* by reason of the fact that: (a) it cannot be invoked by a Chapter XIII trustee, who is without standing; (b) the debt was scheduled as undisputed by the debtor, who is the only party in interest in that respect; (c) that more than a year after confirmation of a plan a Chapter XIII claim may not be reconsidered.

The issue before the court has been stipulated, as have the facts. Counsel for Liberty Loan attempts to enlarge the issue and to rely upon facts which are not a part of this record.[2] In fact, the issue as framed by the parties does not expressly relate to the standing of the trustee in a Chapter XIII proceeding to seek reconsideration under § 57(k). But that issue is before the court by necessary inference, inasmuch as it is the Chapter XIII trustee alone who has sought reconsideration of the claim of Liberty Loan Corporation in the case at bar. Accordingly, the court will treat with the issues to which Liberty Loan Corporation addresses itself in respect of: (a) the general applicability of § 57(k) in Chapter XIII proceedings; and, if necessary, (b) the standing of a Chapter XIII trustee to invoke the provisions of § 57(k) in Chapter XIII proceeding.

The language of § 57(k) has not been altered since it was first enacted as part of the Bankruptcy Act of 1898.[3] Undoubtedly the durability of its original design is explainable by reason of the uncommon clarity of its message. There is nothing ambiguous about § 57(k), unless it be its applicability to arrangement proceedings. But equally as vital a factor in the legislative longevity of § 57(k) must be the appropriateness of its message in the context of bankruptcy court proceedings.

"Bankruptcy proceedings, where time is of the essence, are fraught with dangers of errors and inaccuracies, due to the multiplicity of interested but frequently ill-informed parties. * * * "[4]

Section 57(k) precludes all question of the power of the bankruptcy court to correct errors made in the allowance of proofs of claim in proceedings to which it applies. Is its appropriateness limited to liquidation proceedings in ordinary bankruptcy, as counsel for Liberty Loan Corporation suggests? Or are its curing provisions appropriate and necessary in rehabilitation proceedings under the Bankruptcy Act as well?

The view for which Liberty Loan contends would shackle the bankruptcy courts with a *res judicata* rule in arrangement proceedings much more rigid than Rule 60 of the Federal Rules of Civil Procedure,[5] despite the fact that arrangement proceedings, and especially Chapter XIII proceedings, afford a much greater occasion for errors both of omission and commission, than do trials in federal districts courts. Moreover, it seems evident that the Supreme Court

---

2. For instance, the agreed statement of facts makes no mention of the debtor's schedules. It makes no mention either of whether the debtor did or did not dispute the claim of Liberty Loan Corporation.

3. None of the earlier American bankruptcy laws contained provisions comparable to § 57(k). In fact, it was not until the Bankruptcy Act of 1867 that great stress was placed upon the importance of adequate safeguards and procedures for the allowance and disallowance of claims in bankruptcy cases. *See* 3 Collier, Bankruptcy ¶ 57.01 [1] (14 Ed. 1969) [hereinafter referred to as Collier].

4. 3 Collier, *supra,* ¶ 57.23 [1], at 357. *See* In re Heger, 180 F.Supp. 147, 151 (D. Minn.1959).

5. Rule 60 of Fed.R.Civ.P. generally authorizes the correction of clerical mistakes in judgments and orders at any time. It also authorizes relief from a judgment, within one year thereof, for mistake, inadvertence, surprise, excusable neglect, newly-discovered evidence, fraud etc., and for any other just reason. It should be noted that General Order in Bankruptcy No. 37 renders the Federal Rules of Civil Procedure applicable to proceedings under the Bankruptcy Act, unless inconsistent with it or the General Orders. *See also* In re Pottasch Bros. Co., Inc., 79 F.2d 613 (2d Cir. 1935).

of the United States has recognized the necessity for diluting the rigidity of the principle of *res judicata* in virtually *all* bankruptcy court proceedings, beyond even the provisions of Rule 60 of the Federal Rules of Civil Procedure.

> "(6) When *the trustee* or any creditor or the bankrupt or *debtor* shall desire the reconsideration of any claim allowed against the estate, he may apply by petition to the referee to whom the case is referred for an order for such reconsideration, and thereupon the referee shall make an order fixing a time for hearing the petition, of which due notice shall be given by mail addressed to the creditor. At the time appointed the referee shall take the examination of the creditor, and of any witness that may be called by either party, and if it shall appear from such examination that the claim ought to be expunged or diminished, the referee may order accordingly." (Emphasis added.) General Order in Bankruptcy No. 21(6).

Invocation of General Order No. 21(6) is not limited to the one-year period imposed in Rule 60 of the Federal Rules of Civil Procedure. In fact, it is not qualified, as is § 57(k), by the language— "before but not after the estate has been closed." It would seem that General Order No. 21(6) can even be invoked in a reopened case. So for that matter,

states Collier, may § 57(k).[6] The significance of General Order 21(6) in the present context lies primarily in the fact that it is made expressly invocable, not only by the "trustee", but by the "debtor", which includes a Chapter XIII debtor.[7] The General Orders in Bankruptcy are applicable in Chapter XIII proceedings, unless inconsistent, except for General Orders 14, 18 and 28, which are specifically rendered inapplicable.[8]

The applicability of § 57(k) to proceedings under Chapter XIII is further buttressed by recourse to the language of § 2(a) (2) of the Act, which plainly invests courts of bankruptcy with the power to reconsider allowed claims.

> "The courts of * * * bankruptcy * * * are hereby invested * * * with such jurisdiction at law and in equity as will enable them * * * to * * *
>
> (2) Allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them against bankruptcy estates * * *."[9]

Also, in this connection, § 602 of Chapter XIII[10] would seem to render § 2(a) (2) applicable, since it states that for purposes of testing the application of various provisions of Chapters I—VII references to "bankruptcy" and "bankruptcy proceedings" shall be deemed to relate to

---

6. "Orders of allowance may be reconsidered under § 57k "before but not after the estate has been closed." This wording of § 57k indicates clearly that there cannot be any reconsideration subsequent to closure of the estate, though it does not thus necessarily exclude reconsideration after the reopening of the estate." (footnotes omitted.) 3 Collier, *supra*, ¶ 57.23 [4].

7. General Order in Bankruptcy No. 5(5) states:

> "In proceedings under chapter X, XI, XII, or XIII of the Act, unless and until the debtor is adjudicated a bankrupt, he shall be referred to as a 'debtor.' In proceedings under Chapter IX, the debtor shall be referred to as the 'petitioner.'"

8. General Order in Bankruptcy No. 55(2).

9. Bankruptcy Act § 2(a) (2), 11 U.S.C. § 11(a) (2). *See also* Castaner v. Mora, 234 F.2d 710 (1st Cir. 1956).

10. "The provisions of Chapters 1 to 7, inclusive, of this act shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter: Provided, however, That subsection (f) of section 70 shall not apply in such proceedings unless an order shall be entered directing that bankruptcy be proceeded with pursuant to the provisions of Chapters 1 to 7, inclusive. For the purposes of such application, provisions relating to 'bankrupts' shall be deemed to relate also to 'debtors', and 'bankruptcy proceedings' or 'proceedings in bankruptcy' shall be deemed to include proceedings under this chapter. Bankruptcy Act § 602, 11 U.S.C. § 1002.

"debtors" and to Chapter XIII proceedings.[11]

And finally, we come to a consideration of § 602 of Chapter XIII directly. Counsel for the Chapter XIII trustee contends that § 602 incorporates § 57(k) into Chapter XIII because it is not inconsistent therewith. What then is the nature of the inconsistency alleged by counsel for Liberty Loan Corporation?

"This, in addition to the fact that Sections 57(k) and 57(*l*) are expressly applicable to straight bankruptcy proceedings (Chapter I through VII), the mechanism of their employment and ultimate implementation, i. e., power in trustee to invoke, and recovery of previously-paid dividends from creditors to swell estate for creditors in *liquidation* proceedings, strengthens the conclusion that they are limited in application to a *liquidation* proceeding. Obviously, Section 57(k) contemplates that disallowance would make a greater dividend available to creditors. This is not possible in Chapter XIII." [12]

The court interprets this argument as either a surprisingly naive view of the nature and purpose of the administration of proceedings in this court, or an attempt to persuade the court to adopt what would be an unreasonably narrow view of its proper role in arrangement proceedings. The suggestion seems to be that § 57(k) is irrelevant in a re-

habilitation proceeding, since the wage-earning debtor has already paid or agreed to pay the monies which have been or will be used to pay all claims allowed, and no *creditor* can benefit by the court's subsequent reconsideration and disallowance of a claim previously allowed through error. It bears remembering that Chapter XIII is a *debtor* relief proceeding, as well as a more efficient tool for creditor recoveries. It also bears mention that the bankruptcy court is a court of equity, concerned, as it must be, with justice and fairness not only vis-a-vis one creditor and another, but vis-a-vis each creditor and the debtor.

"If bankruptcy administration is to result in a truly equitable distribution of a debtor's assets among his creditors it is imperative that a person's qualifications as a creditor entitled to a distributive share be carefully scrutinized." [13]

There is not a single basic aim of American bankruptcy jurisprudence which would not be inhibited by giving sway to the view advanced in this case by Liberty Loan.[14] It is difficult to understand how the dominant theme of equality of distribution among creditors could be advanced by accepting the view that legitimate creditors with valid claims should be required to await the accumulation of sufficient future earnings of the debtor to permit payment of a pro-rata dividend to them *and* to creditors who hold in-

---

11. Id. Analogously, the phrase "bankruptcy estates," appearing in § 2(a) (2), would seem interchangeable with "debtors' estates" under Chapter XIII.

12. Memorandum of Law of Liberty Finance Company (sic.), filed March 2, 1970, at 3.

13. 3 Collier, *supra*, ¶ 57.01 [1.3], at 109. *See also* City National Bank & Trust Co. v. Oliver, 230 F.2d 686, 689 (10th Cir. 1956), (Chapter XIII trustee has same avoidance powers as trustee in bankruptcy to set aside voidable liens) ; In re Heger, 180 F.Supp. 147, 151 (D.Minn.1959) ; In re Maye, 180 F.Supp. 43, 45 (E.D.Va. 1959), (§ 57(n) applicable in Chapter XIII proceedings).

14. "The ultimate public purpose of the Bankruptcy Act of 1841 and of all true

bankruptcy law is the promotion of the principle of equality of distribution among creditors and the resultant displacement of grab-law. 1 Remington, Bankruptcy § 3 (5th Ed. 1956). The ultimate purpose of Chapter XIII is essentially identical. In affording the wage earner and his creditors a more orderly and uniform alternative to grab-law, Chapter XIII promotes vastly increased equality of distribution among creditors of the debtor's future earnings and frustrates those creditors who would rely upon the prospect of unfair advantage as a substitute for sound consumer credit extension practices." Cyr, "The House That Jack Built," Proceedings Of Fifth Seminar For Referees In Bankruptcy, 297, 301 (1968).

**514**

valid claims. Yet if claims mistakenly allowed cannot be reconsidered in Chapter XIII proceedings, that is the net effect upon bona fide creditors. Furthermore, the beneficent aims of Chapter XIII [15] would seem illusory indeed, if the court in which such proceedings are administered is to demonstrate less interest and concern for the just allowance of claims in Chapter XIII than in liquidation proceedings.[16] In short, to assert that the impossibility of enlarging the dividend to creditors renders the reconsideration of allowed claims irrelevant in Chapter XIII, even though the claim is not justly owing, is to ignore the dominant debtor relief and rehabilitation functions of Chapter XIII. It seems to this court that the importance of permitting the payment of dividends only on claims that are justly and truly owing to the claimant by the debtor is even greater in Chapter XIII proceedings. For in Chapter XIII the debtor voluntarily undertakes, generally, to pay his debts in full, often without the benefit of accurate knowledge as to how much is owed, or to whom.[17]

The authorities cited by counsel for Liberty Loan Corporation are both procedurally and temporally inapposite. Counsel cites cases involving compositions under old § 12,[18] dating from the "laissez-faire" business era,[19] in support of an attempted analogy to suggest that creditors have no interest in the amount in which another creditor's claim is allowed, because their legitimate interest is fixed by their composition agreement with the debtor. Those cases were decided in a very different legal and commercial climate than that which exists today, or which existed in 1938 when Chapter XIII was enacted. In recent years Congress has not been unmindful of the comparatively greater need which individual wage-earning debtors as opposed to business debtors have for the

---

15. The Supreme Court of the United States has described as the legislative purpose of Chapter XIII, that "[i]t creates an equitable and feasible way for the honest and conscientious debtor to pay off his debts rather than having them discharged in bankruptcy." Perry v. Commerce Loan Co., 383 U.S. 392, 396, 86 S.Ct. 852, 855, 15 L.Ed.2d 827 (1965).

16. In an analogous context, arising under Chapter XI, it has been held by this court that it is the duty of the referee in bankruptcy, on his own motion if need be, to reduce any excessive fee application by the attorney for the debtor, even though neither the debtor nor any other party in interest objects. In re Dole Co., 244 F.Supp. 751, 754 (D.Me.1965). The mere fact that creditors have received all that they are entitled to receive does not mean that their interest is academic. As creditors they may well be concerned about the prospects for the debtor's future financial well-being. Cf. In re Owl Drug Co., 16 F.Supp. 139, 144 (D.Nev.1936), aff'd. sub nom, Cohn v. Edler, 90 F.2d 823 (9th Cir. 1937). As was well expressed by the U. S. District Court for the District of Minnesota:
"It would not be fair and equitable to the other creditors to have the payment of their claims unduly deferred in a wage earner proceeding primarily because the debtor has included creditors who have no standing in a Bankruptcy Court." In re Heger, supra, 180 F.Supp. at 151.

17. See In re Heger, supra, at 151.

18. The two principal authorities relied on are Nassau Smelting & Refining Works v. Brightwood Bronze Foundry Co., 265 U.S. 269, 44 S.Ct. 506, 68 L.Ed. 1013 (1924) (decided under § 12 of the Act of 1898, which contained no provision comparable to § 602, incorporating consistent provisions of Chapters I–VII into Chapter XIII); and Cumberland Glass Manufacturing Co. v. DeWitt & Co., 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915) (involving a question of the applicability of the set-off provisions of § 68 to a composition under § 12).

19. Counsel for Liberty Loan Corporation asserts that § 12 of the Bankruptcy Act of 1898 was "the predecessor of present Chapter XIII". While it did precede Chapter XIII, its significance in the evolution of Chapter XIII is minor compared to § 74. See Lee, "Chapter XIII In Historical Perspective," Proceedings Of Fourth Seminar For Referees In Bankruptcy, 261, 263 (1967).

continuing protection of the court following confirmation.[20]

This court holds that § 57(k) is applicable to proceedings under Chapter XIII.[21] The court is also satisfied, on the basis of the express provision of General Order in Bankruptcy No. 21 (6),[22] that a Chapter XIII trustee may properly invoke the relief of § 57(k).

Accordingly, it is ordered, adjudged and decreed that the Chapter XIII trustee within ten days amend the so-called "Objection to Claim" filed on December 12, 1969, so as to set forth a proper request for reconsideration of the allowance of the claim of Liberty Loan Corporation of Cumberland, and of the grounds upon which such reconsideration ought to be granted, and it is further

Ordered, adjudged and decreed that within ten days of the filing of the amended application for reconsideration by the Chapter XIII trustee, Liberty Loan Corporation of Cumberland shall file an answer to said application, whereupon the court shall fix a time and place for trying any factual issues and a time for the filing of any necessary memoranda of law in support of the positions of the respective parties.

Dated at Bangor, in said District, this 20th day of March, 1970.

Referee in Bankruptcy
United States Courthouse
Bangor, Maine

20. Chapter XIII contemplates that the court will retain jurisdiction pending consummation, usually for a three-year period following confirmation. *See* Bankruptcy Act §§ 658, 660, 661; 11 U.S.C. §§ 1058, 1060, 1061. Whereas Chapter XI envisions the retention of jurisdiction after confirmation for but limited purposes, unless the plan as confirmed provides otherwise. *See* Bankruptcy Act §§ 367(4), 368, 369; 11 U.S.C. §§ 767(4), 768, 769.

21. The U. S. Court of Appeals for the First Circuit has held that an error made three years earlier in the allowance of a creditor's claim in a Chapter XII arrangement proceeding was properly corrected by the court through recourse to § 57(k) in the subsequent bankruptcy proceeding. Castaner v. Mora, 234 F.2d 710, 713 (1st Cir. 1956).

22. General Order in Bankruptcy No. 21(6) is to be read in conjunction with § 57(k). *Id.* *See* discussion at pp. 511–512, *supra.*