In re CHATTANOOGA WHOLESALE ANTIQUES, INC., Debtor.

C. Kenneth STILL, Trustee,

v.

ROSSVILLE BANK, Defendant.

Bankruptcy No. 1–82–02041.
Adv. No. 1–84–0300.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 11, 1986.

Thomas E. Ray & Harold L. North, Jr., Ray & North, P.C., Chattanooga, Tenn., for plaintiff.

Fred T. Hanzelik, Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The debtor, Chattanooga Wholesale Antiques, filed a chapter 11 bankruptcy petition and had a plan of reorganization confirmed, but was unable to complete the plan. The case was converted from chapter 11 to a chapter 7 liquidation. The plaintiff was appointed trustee in bankruptcy. He seeks to recover payments that the debtor made to the defendant, Rossville Bank, both before the debtor filed its chapter 11 petition and during the chapter 11 case. The trustee contends that the prepetition payments to the bank can be recovered as preferential transfers. He contends that the payments during the chapter 11 are recoverable either because they were unauthorized postpetition transfers under § 549 or because they were erroneously paid on the basis that the bank's claim was secured.

### The Preference Question

During the 90 days before it filed its chapter 11 bankruptcy petition, the debtor wrote two checks to the bank for $7,488.97 and $3,082.29. The checks were written on the debtor's account with the bank and applied to antecedent loan debts to the bank. Exhibits 1 & 2 (Notes 8007809 & 8007353).

The key question, as the court sees the proof, is whether the trustee proved that the payments were preferential under § 547(b)(5). 11 U.S.C. § 547(b)(5).[1] This proof is usually easy in a case begun as a chapter 7 liquidation since events after filing of the petition should not adversely affect the liquidation value of the debtor's assets. In a case begun as a chapter 11 and converted to chapter 7, the question is whether the trustee must back up and determine what would have been paid in a chapter 7 liquidation case begun when the chapter 11 petition was filed. The question has recently been answered in this circuit. *In re Tenna Corp.*, 801 F.2d 819 (6th Cir. 1986), reversing 53 B.R. 493, 13 Coll.Bankr. Cas.2d 1153 (N.D.Ohio 1984); 43 B.R. 140, 11 Coll.Bankr.Cas.2d 477 (Bankr.N.D.Ohio 1984). The court held that the trustee must estimate what the creditors would have been paid if the case had began as a chapter 7 liquidation.

1. Except when otherwise indicated, all citations are to the Bankruptcy Code before the 1984 amendments took effect.

The trustee's proof is that unsecured creditors were paid 8.3% under the chapter 11 plan. This proof does not satisfy the requirement of *In re Tenna*, because it does not necessarily reflect what the creditors would have received in a chapter 7 liquidation. The trustee could be trying to make the point that 8.3% paid under the plan was paid only because of the debtor's continued operation under chapter 11, whereas nothing would have been paid in a chapter 7 liquidation. The argument is not made clearly, if at all. In any event, it would also require proof of what creditors would have been paid in a chapter 7 liquidation at the beginning of the case. Since there is no such proof, the trustee cannot recover the prepetition payments as preferential transfers.

### The Postpetition Payments

The debtor made one payment to the bank by a check for $4,061.78 written less than two weeks after it filed its chapter 11 petition. The payment was apparently applied to note 8007353. Exhibit 2.

Between two and three months after filing of the chapter 11 petition, the debtor and the bank filed a "Stipulation Authorizing Debtor to Use Cash Collateral and For Adequate Protection". The stipulation recited that the bank had a valid security interest in the debtor's cash collateral to secure a prepetition debt of $75,490.67. The stipulation then provided:

(1) Debtor is hereby authorized to use debtor's pre-petition cash account and all cash generated by it during the postpetition operation of the debtor's business.
(2) In consideration thereof, the Rossville Bank is hereby granted a valid and enforceable first lien and security interest in debtor's inventory.
(3) Debtor shall pay the outstanding obligations to the Rossville Bank at the rate of $1,800.00 per month, plus 14% interest annually, through the plan.

The day after the stipulation was filed the court entered an order with the same provisions.

The debtor's disclosure statement and plan followed the stipulation and order.

They provided that the bank would be paid in full at the rate of $1,800 per month plus 14% interest. The plan was confirmed on April 20, 1983.

The plan provided that creditors should file proofs of claims not later than March 23, 1983, the date set by the court under Rule 3003. The bank did not file a proof of claim until September, 1983. The bank's claim was not scheduled as disputed, contingent, or unliquidated.

The payments to the bank as provided in the stipulation and the confirmed plan totaled $30,600. The proof is unclear as to whether any of these payments were made before confirmation of the plan. The stipulation and order for the use of cash collateral only required payments under the plan and not before. The court assumes that all the payments were made under the confirmed plan.

The debtor continued under the plan for about sixteen months, but being unable to carry it out, moved to convert the case to chapter 7 and the motion was granted. The plaintiff was appointed trustee in bankruptcy. He objected to the bank's claim on the ground that it should be treated as unsecured because the security interest was unperfected when the chapter 11 petition was filed. The court agreed and avoided the security interest. 11 U.S.C. § 544(a)(1), (2); Tenn.Code Ann. § 47–9–302(1).

The court will first consider whether the trustee can recover the payments under the plan.

When a debtor files a chapter 11 petition, it becomes to some extent a new entity, called the debtor-in-possession. The debtor-in-possession has essentially the same rights and responsibilities as a trustee in bankruptcy. 11 U.S.C. §§ 1106, 1107, & 704. This means that the debtor-in-possession must act for the benefit of all creditors. It has the powers of a trustee to avoid liens and other transfers.

The debtor-in-possession not only has the power to avoid liens and other

transfers, but also the duty to exercise that power for the benefit of all creditors. *In re Hughes,* 704 F.2d 820, 10 Bankr.Ct.Dec. 693 (5th Cir.1983); *In re E. Paul Kovacs and Co., Inc.,* 16 B.R. 203 (Bankr.D.Conn. 1981). This does not mean that the debtor-in-possession must attempt to avoid every lien or other transfer that might be avoidable. The debtor-in-possession, like a trustee, must consider the economics of attempted avoidance.. However, when the plan proposes to treat a claim as secured, the debtor-in-possession should at least reveal the possibility, if any, of avoiding the lien securing the claim. 11 U.S.C. § 1125; *In re Metrocraft Pub. Services, Inc.,* 39 B.R. 567, 10 Coll.Bankr.Cas.2d 1182 (Bankr.N.D. Ga.1984). Obviously a debtor-in-possession can carry out this duty only if it first carries out the duty to investigate claims. 11 U.S.C. §§ 1107, 1106 & 704(4). In this case, the debtor-in-possession failed to carry out its duties.

■ The bank was not required to file a proof of claim that would have revealed its failure to perfect its security interest. The bank's claim was not scheduled as disputed, contingent, or unliquidated and so was "deemed allowed" without the filing of a proof of claim. 11 U.S.C. §§ 502 & 1111(a). The plan provided that creditors should file proofs of claim before the deadline set by the court under Rule 3003. But the deadline set under Rule 3003 applies only to claims not already deemed allowed. Bankruptcy Rule 3003(b) & (c). In this situation, the statutes, the rules, and the plan did not require the bank to file a proof of claim. *In re Collins Manufacturing Corp.,* 19 B.R. 535, 8 Bankr.Ct.Dec. 1345 (Bankr.E.D.Tenn.1982).

Under § 549(a), the trustee can recover postpetition payments that were not authorized by the Code or the court. 11 U.S.C. § 549(a)(2)(B). The trustee in effect argues that the payments were not authorized because the claim should not have been treated as secured.

The court might hold that plan payments on a secured claim were unauthorized if the claim were a fraudulent claim. The court might also hold that the payments were unauthorized if the creditor obtained confirmation of the plan by fraud, but this reasoning is less certain since § 1144 does *not* allow confirmation to be revoked for fraud if more than 180 days have passed after confirmation. Payments called for by the plan might also be unauthorized if based on a mutual mistake, but it is difficult to imagine such a. case. In any event, this case does not present such questions.

■ The proof shows that the debtor-in-possession failed to discover that the bank's security interest was avoidable. The proof does not show that the debtor-in-possession committed fraud by finding it out before confirmation and failing to disclose it.

The bank did not commit fraud in obtaining confirmation, and its claim was not fraudulent. The bank was not required to file a proof of claim that would have revealed the failure to perfect its security interest. The bank was not required to volunteer the information that it had failed to file a financing statement to perfect its security interest. As far as the bank was concerned, its claim was secured until in fact avoided.

When the drafters of the Code excused creditors from filing proofs of claims in chapter 11 cases, they must have understood that it would leave the door open for a debtor-in-possession to buy peace with its secured creditors under the plan without bothering to try to avoid their liens or even investigating to determine if the liens could be avoided. This problem will exist in many cases in which the debtor-in-possession can make substantial payments to one or a few secured creditors whose cooperation will open the way to quick confirmation of a plan. Other creditors should realize that this is a risk built into chapter 11.

The court concludes that the payments were authorized by confirmation of the plan and cannot be recovered under § 549(a). The few decisions in point support this result. In *In re Ford,* the proceeds of a postpetition contract were not

subject to the creditor's prepetition security interest but the debtor used the proceeds to make payments on the prepetition secured debt as provided in the chapter 11 plan. *In re Ford,* 61 B.R. 913, 14 Coll. Bankr.Cas.2d 1399 (Bankr.W.D.Wis.1986). The trustee after conversion of the case to chapter 7 attempted to recover the payments. The court held that, assuming the money was property of the bankruptcy estate, the payments were authorized and not recoverable under § 549. In another case, some administrative expenses and lower priority claims were paid under a confirmed plan, but the complaining parties received no payments on their administrative expense claims before the case was converted to chapter 7. They sought to "reel in" the earlier payments so that the money could be redistributed and they would receive a share. The court held that payments under the plan could not be recovered for the benefit of creditors dealt with by the plan. *In re Kaleidoscope of High Point, Inc.,* 56 B.R. 562, 14 Coll.Bankr.Cas.2d 83 (Bankr. M.D.N.C.1986). In a reported decision Judge Mahoney held that a chapter 11 trustee, who proposed a plan treating a debt as secured, was bound by the confirmed plan to pay the creditor the proceeds from the sale of the collateral, even though the trustee had since determined that the creditor's lien wasavoidable. *In re Mahloch,* 62 B.R. 102 (Bankr.D.Neb.1986), *Villm v. Wallace,* 62 B.R. 102 (Bankr.D. Neb.1986).

The trustee next argues that he can recover the payments as a result of the court's reconsideration of the bank's claim and decision to hold it unsecured.

Section 502(j) of the code, as it read before the 1984 amendment, applies to this case. It provides that the court can reconsider a claim at any time before a bankruptcy case is closed. 11 U.S.C. § 502(j). It says nothing about whether the trustee can recover payments on an allowed claim that has been reconsidered and disallowed or allowed as unsecured rather than secured.

Under the Bankruptcy Act of 1898, the subsection on reconsideration of claims was followed by a subsection that expressly provided for the recovery of dividends (previously authorized payments). 11 U.S.C. § 93(k), (*l*) (1978). The 1984 amendments to § 502(j) seem to make it clear that, by leaving out a specific right to recover dividends in the original § 502, Congress did not intend to take away the trustee's right to recover. The last sentence added by the 1984 amendment provides:

> This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

Under the 1898 Act, the courts held that claims could be reconsidered in reorganization, arrangement, and wage-earner plan cases (chapters X, XI, & XIII). *National City Bank v. O'Connell,* 155 F.2d 329 (2d Cir.1946); *In re Madden,* 388 F.Supp. 47 (D.Idaho 1975); *In re Cote,* 313 F.Supp. 509 (D.Me.1970). The Bankruptcy Code does not change this rule. 11 U.S.C. § 103.

The court's authority to reconsider and disallow a claim under the 1898 Act did not mean that the trustee could automatically recover dividends already paid on the claim. *In re Jules Meyers Pontiac, Inc.,* 779 F.2d 480 (9th Cir.1985). The rule under § 502(j) should be same.

There are several technical arguments against allowing the trustee to recover the payments to the bank despite reconsideration of its claim.

1.

The first argument is that only § 549 applies and it does not allow recovery of postpetition payments authorized in a confirmed chapter 11 plan. The court believes that § 549(a) was not intended to deal with the problem of whether earlier payments that were authorized according to the claim's earlier status can be recovered when the claim is reconsidered and its status is altered.

2.

The second argument is also based on the trustee's avoiding powers, or more to

the point, the lack thereof. Conversion of a chapter 11 case to chapter 7 does not change the date of filing of the bankruptcy petition. 11 U.S.C. § 348. This appears to mean that the trustee cannot use the avoiding powers *among postconfirmation creditors only,* as if conversion to chapter 7 was the filing of a new bankruptcy case. But see 11 U.S.C. § 348(d). The avoiding powers surely do not apply to payments made *under the plan* by comparing them to what other creditors were paid under the plan or by comparing them to what was paid or will be paid on postconfirmation claims. This implies that payments under a plan cannot be recovered as a result of reconsideration of a claim, no matter how unfair the payments were to creditors dealt with by the plan or postconfirmation creditors.

The third and fourth arguments are related.

### 3.

The third argument is that the trustee cannot recover the payments because they were not property of the bankruptcy estate. This argument in effect distinguishes between payments by the trustee in a liquidation case under chapter 7 and payments by a debtor under a confirmed chapter 11 plan.

In a chapter 7 liquidation case, the debtor's assets will be reduced to a fixed amount of money that is to be paid on general unsecured claims and priority claims as provided in Code · § 726. 11 U.S.C. § 726. If the trustee overpays a particular claim he may be allowed to recover the overpayment and distribute it as required by § 726.

In a chapter 11 case, however, the payments under a confirmed plan usually come from the debtor's business earnings after confirmation. The division of the debtor's income among its creditors must be determined by the chapter 11 plan, rather than the statutes. The statutes impose some requirements as to how a plan must treat the various kinds of claims in order for the plan to be confirmed. But these requirements allow the debtor considerable leeway in dividing the available income among creditors. The point is that the recovery of payments authorized by a confirmed plan may amount to remaking the plan long after confirmation could be revoked.

This is less of a problem if the debtor is still operating under the plan and the payments fall into what the court might call the authorized-unauthorized category. It makes a difference that the debtor is still carrying out the plan because the debtor can redistribute the money recovered as provided in the plan, or at least it will go into the debtor's income and be available for that purpose.

As to authorized-unauthorized payments, the court has in mind two situations—first, payments on an allowed claim that is reconsidered and disallowed, and second, payments on a claim that was misclassified or miscalculated *after* confirmation of the plan. In either situation, there may be equitable reasons for denying recovery.

As to a claim that is reconsidered and disallowed, a confirmed plan technically authorizes payment only on allowed claims.

The other situation recognizes that a plan can, to some extent, reserve until after confirmation the determination of which unsecured claims are entitled to priority, the classification of the general unsecured claims, and the determination of the exact amount of such claims. An error after confirmation may result in a claim being paid more than it should have been paid under the plan. The court sees no especially compelling reasons for an absolute bar to the recovery of such payments by the debtor or the trustee, while the chapter 11 plan is still being carried out. *In re Madden,* 388 F.Supp. 47 (D.Idaho 1975).

If the case has been converted to chapter 7, the argument against allowing the trustee to recover is that the chapter 7 trustee cannot go back in time and return the money to the debtor for its use under the plan. The court doesn't see that this makes a lot of difference. The (assumed) fact is that the payments really were not payments provided for in the plan. A per-

fect remedy is not required before any remedy can be granted. Unless there are equitable reasons for denying recovery, why shouldn't the trustee recover the money for the benefit of all creditors? The recovery does not upset the finality of confirmation.

### 4.

■ The finality of confirmation is the fourth argument against allowing the trustee to recover the payments to the bank in this case. The argument is as follows. The overpayment did not result from an error in the amount or classification of the claim after confirmation. It did not result from allowance of a claim that should have been disallowed. The plan itself determined that the bank's claim was secured and set forth exactly how much it would be paid per month. The court could reconsider the bank's claim and declare it unsecured for future purposes, but recovery of the plan payments will amount to undoing confirmation of the plan. Confirmation of a plan binds the debtor, the creditors, and the debtor's stockholders and partners. 11 U.S.C. § 1141(a). It removes the debtor's property from the bankruptcy estate and revests it in the debtor free of the claims of creditors, stockholders, and partners, except as provided in the plan. 11 U.S.C. § 1141(b), (c). A confirmed plan cannot be modified after substantial consummation. 11 U.S.C. § 1127. Thus, confirmation is an irrevocable determination of the rights fixed by the plan.

The court must add to this argument two earlier conclusions. First, the payments to the bank are not recoverable under § 549 as unauthorized postpetition transfers. Second, the payments are not recoverable on the basis that they were preferential or fraudulent or otherwise avoidable as to creditors whose claims arose after confirmation or as to creditors whose claims were provided for in the plan. Finally, the court must point out that confirmation of a plan can be revoked only for fraud in obtaining confirmation and only if a complaint is filed within 180 days after confirmation. 11 U.S.C. § 1144; Bankruptcy Rule 7001. Thus, the statutes seem to say that any unfairness that makes its way into a confirmed plan, by fraud or otherwise, is not necessarily correctable.

On this point, the bank could argue that the creditors dealt with by the plan had their opportunity to determine the true facts but failed to do so, and the bank did nothing wrong in taking advantage of the situation. The creditors counter-argument would be that they had the right to rely on the debtor-in-possession to investigate claims and avoid liens or at least reveal the possibility of avoidance. Since the bank knowingly took unfair advantage based on the debtor's failure, and since the money cannot be recovered from the debtor, the bank should be required to pay it back.

These arguments bring the court back to an earlier point. There is built into chapter 11 the risk that a debtor-in-possession will forsake its duty to avoid liens in favor of obtaining quick confirmation of a plan by buying off its supposedly secured creditors. Other creditors can avoid this risk by assuring that the debtor performs of its duty to investigate claims and avoid liens or by investigating the claims themselves.

These arguments do not apply to creditors whose claims arose after confirmation. As to them, the technical reason for denying recovery from the bank is that the Code does not allow recovery of payments under a plan for the benefit of postconfirmation creditors. This rule makes sense as a practical matter. The opposite result would significantly impair the willingness of creditors to accept chapter 11 plans.

The finality argument also includes the "perfect remedy" or "you can't go back in time" argument. If the money is recovered and redistributed under § 726, it will amount to remaking the confirmed plan. Furthermore, the court cannot say what would have happened if the plan had not been confirmed or if the avoidability of the bank's security interest had been discovered by other creditors before confirmation of the plan. The court rejected this argument earlier, but it has validity to the ex-

tent it is based on finality as a value in and of itself.

Finality is a consideration in and of itself, even for decisions that were clearly wrong on the law or were wrong only because the true facts were not brought to the court's attention. A wrong decision of either kind is presumed to be unfair to someone. The law allows this unfairness to stand in the interest of putting litigation to a definite end. Confirmation of a chapter 11 plan is different from many court decisions because it does not completely end the case. Nevertheless, the statutes appear to give confirmation the same general effect as any decision that is not appealed and is no longer revocable.

■ The court concludes that the trustee cannot recover the payments under the plan. That leaves only the question of whether he can recover the payment made shortly after the case began and before confirmation of the plan.

During the interim between filing of a chapter 11 petition and confirmation of a plan, the debtor-in-possession may find it necessary to make payments on a secured claim. One court has held that such a payment is authorized by the Code and is not recoverable under § 549. *In re Ford,* 61 B.R. 913, 14 Coll.Bankr.Cas.2d 1399 (Bankr.W.D.Wis.1986). Such payments may be authorized to an extent, depending on how long they continue and whether the lien is obviously avoidable or the claim is not allowable as secured under § 506. The court might hold that a creditor takes such payments subject to recovery if the claim ends up being unsecured under § 506, or if the lien is avoided during the chapter 11 case. In this case, however, the chapter 11 plan treating the debt as secured was confirmed and continued for long past the time allowed to file a complaint for revocation of confirmation. The court concludes that the payment cannot be recovered.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.