In re NTG INDUSTRIES, INC., d/b/a Northtown Glass, an Illinois Corporation, Debtor.

Bankruptcy No. 88 B 01635.

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 27, 1990.

Glenn R. Heyman, Dannen, Crane, Heyman & Simon, Chicago, Ill., trustee.

Scott R. Clar, Dannen, Crane, Heyman & Simon, Chicago, Ill., for trustee.

Michael J. Golde, Towbin & Zazove, Ltd., Chicago, Ill., for creditor's committee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Glenn R. Heyman, as Chapter 7 Trustee (the "Trustee") for turnover of property of the estate pursuant to 11 U.S.C. §§ 541 and 542, and on the second application of Towbin & Zazove, Ltd. ("T & Z") as attorneys for the Chapter 11 Official Unsecured Creditors' Committee (the "Committee"), pursuant to 11 U.S.C. § 331 for interim compensation in the amount of $14,630.00 and reimbursement of expenses in the sum of $404.53. The Trustee seeks turnover and an accounting of approximately $76,802.52 in recovered preferences which T & Z holds pursuant to the Debtor's confirmed Chapter 11 plan of reorganization (the "plan"). T & Z seeks fees and expenses for services rendered in connection with the preference recoveries, as well as the additional sum of $4,117.54, previously allowed from T & Z's first application, but not paid by the Debtor. Each party has objected to the relief sought by the other party. Proper notice was given to all creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002. For the reasons set forth herein, the Court allows the Trustee's motion for turnover and accounting. The Court further allows in full T & Z's interim application for compensation and expense reimbursement.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (E) and (O)[1].

---

1. The Trustee's motion and T & Z's response in opposition procedurally seek relief by way of a contested matter contemplated by Bankruptcy Rule 9014, rather than by way of an adversary proceeding under Bankruptcy Rule 7001. The parties have agreed to have the matter so determined. *See* Trustee's motion ¶ 9; T & Z's response ¶ 9. Such agreement standing alone is not dispositive because Bankruptcy Rule 7001(1) requires most proceedings to recover money or property to be brought by way of a formal adversary proceeding. The Seventh Cir-

cuit has recently followed the general requirement of the rule in *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir.1990). One of the exceptions contained within Rule 7001 is for proceedings under Bankruptcy Rule 6002. Bankruptcy Rule 6002 provides for the accounting of property of the estate by a custodian, but does not set forth the procedure for seeking a turnover order. T & Z fits the statutory definition of a custodian under 11 U.S.C. § 101(10)(C) because of the prior authorization of this Court for T & Z to act

## II. FACTS AND BACKGROUND

The Debtor filed a Chapter 11 petition on February 4, 1988. Subsequently, the U.S. Trustee appointed the Committee pursuant to 11 U.S.C. § 1102. T & Z was authorized to act as attorneys for the Committee on July 7, 1988, pursuant to 11 U.S.C. § 1103. The various interested parties entered into negotiations which culminated in a consensual plan, which was confirmed on April 10, 1989. The Debtor's plan provided, inter alia, for payment of at least a thirty percent dividend to allowed unsecured claimants to be paid out of the Debtor's future operations. Ten percent was to be paid shortly after confirmation with additional five percent installments to be distributed at subsequent six month intervals. The Debtor's financial projections did not bear fruit. The Debtor failed to pay the five percent installments and all of the allowed professional fees and administrative expenses incurred to date of confirmation for which those claimants had agreed to receive deferred payments. In addition, the Debtor failed to timely file the post-confirmation report required under Bankruptcy Rule 2015(a)(6). Thus, although substantial consummation of the plan had occurred for purposes of sections 1127(b) and 1142, the Debtor materially defaulted under section 1112(b)(8). After the required notice and hearing under Bankruptcy Rule 2002(a)(5), the case was converted to Chapter 7 on January 30, 1990. Thereafter, the Trustee was appointed.

Certain additional terms of the plan are critical to the outcome of the matters before the Court. Section 4.1(f) of the plan contained provisions for the treatment of the unsecured creditors in addition to the dividends summarized above. It provided that on the effective date of the plan the Debtor shall assign to the Committee, for the benefit of holders of unsecured claims, all pre-petition claims and causes of action arising under sections 544, 547 and 548 of the Code. It further stated that the Committee may, in its sole discretion, prosecute such claims and shall distribute the net proceeds of any recovery on a pro rata basis to holders of allowed unsecured claims. Section 5.4 of the plan provided that the Debtor retained certain rights, including the right to prosecute any and all causes of action belonging to the Debtor, including actions to obtain property of the estate or to avoid transfers of property under sections 544, 547 and 548, subject to Section 4.1(f) of the plan. Section 5.5 of the plan provided for the prosecution of section 544, 547, and 548 actions by the Committee and required the Debtor to furnish reasonable access to its books and records and for assistance to the Committee in its litigation efforts in such matters.

Section 9.1 of the plan provided for the retained jurisdiction of the Court post-confirmation to determine matters concerning title to property of the Debtor as of the plan's effective date, all actions to recover property of the estate, to fix and determine all professional fees and other costs of administration, and resolve all other matters in connection with the interpretation of the plan.

## III. ARGUMENTS OF THE PARTIES

The Trustee asserts: (1) the preferences held by T & Z are property of the estate

---

as attorneys for the Committee. T & Z is an officer of the Court and thus, an agent under the Debtor's plan to pursue and collect voidable preferences for the benefit of the unsecured pre-petition creditors. Although custodians for purposes of section 101(10) are usually pre-petition liquidators of property, the statutory definition is not so limited. The definition of a custodian has been broadly interpreted. *See generally, In re Cash Currency Exchange, Inc.,* 762 F.2d 542 (7th Cir.1985), *cert. denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985). The Rule 6002 exception to Rule 7001(1) has been interpreted to require that a proceeding to have a custodian turnover property of the estate is to be by motion practice. *See* Editor's Comment, *Norton Bankruptcy Rules Pamphlet,* at 360 (1989–1990 ed). Thus, because the parties have expressly agreed to proceed by way of motion, which was favorably viewed in *In re Pence,* 905 F.2d 1107, 1109 (7th Cir.1990), and had the full opportunity to present their respective cases as they would have in a full adversary proceeding, and relief by way of an accounting is sought, the Court will decide the motion as a contested matter under Bankruptcy Rule 9014, rather than deny the motion for turnover. In this manner, the parties will be spared additional costs and the interests of judicial economy can also be served without violating either the spirit or the exact letter of Bankruptcy Rule 7001(1).

pursuant to section 541; (2) a turnover is required by section 542; and (3) T & Z should furnish an accounting. Although the Trustee does not object to either the reasonableness or the necessity of T & Z's fees, the Trustee argues that payment of the fees would be prejudicial to other post-confirmation creditors, who may stand on an equal footing with T & Z. In addition, the Trustee contends that payment would violate the priorities of section 507. Furthermore, the Trustee states that the Debtor never actually assigned the section 547 causes of action, nor could any attempted assignment be valid, as only the Trustee can properly pursue preference recoveries for the benefit of the estate. The Trustee concludes that T & Z is a Chapter 11 administrative creditor whose application for compensation is subordinated to the superseding Chapter 7 administrative expenses.

T & Z makes various responses in opposition to the Trustee's arguments. First, T & Z argues Section 4.1(f) of the plan assigned the avoidance actions to the Committee, expressly for the benefit of the unsecured creditors, which is allowable under both section 1123(b)(3)(B) and the case law. The preference recoveries obtained to date are held by T & Z in a separate interest bearing account for the benefit of the unsecured creditors in accordance with the plan. The funds in question are therefore not property of the estate and not subject to turnover because the plan provisions created an express or implied trust in the proceeds solely for the benefit of the unsecured creditors. T & Z further asserts that the Trustee's motion constitutes an impermissible collateral attack on the order of confirmation, lacks grounds and is untimely under section 1144. Moreover, T & Z contends that the motion is inconsistent with the effect of section 1141 and the plan is a new contract between the Debtor and its creditors which the Trustee cannot set aside or alter. T & Z further asserts the Trustee may not act in such a way to unilaterally rescind or modify the Debtor's obligations under the plan because there had been substantial consummation prior to the Debtor's material default. T & Z also argues that section 1123(a)(5)(B) provides that a plan may transfer property to a third party as a means for execution of the plan terms. Lastly, T & Z asserts that if the Court determines that the preference proceeds are property of the estate and should be turned over to the Trustee, then T & Z should be awarded compensation under the common fund doctrine.

## IV. DISCUSSION

### A. *THE TURNOVER MOTION*

The matters at bar present some of the issues raised where a reorganized debtor's business fails and the Chapter 11 case converts to Chapter 7. Although the Bankruptcy Code expressly deals with many matters pre-confirmation in Chapter 11, and some matters post-confirmation, it leaves large gaps in clearly explaining everything that should happen in a failed confirmed Chapter 11 case that is converted to Chapter 7.

Section 348 contains provisions concerning the effect of conversion, but does not answer all questions which arise, and fails to cover the matters in this case. Section 348(a) states that conversion constitutes an order for relief in the chapter to which the case is converted. The exceptions contained in section 348(b) and (c) not involving the matters at bar, does not effect a change in the filing date of the petition, the commencement of the case, or the order for relief. Section 348(d) dealing with certain post-petition claims is likewise inapplicable to the matters, as is section 348(e) dealing with post-conversion termination of the services of any pre-conversion trustee or examiner. The legislative history does not contain any additional aid. *See generally,* 2 Ginsberg, *Bankruptcy: Text, Statutes, Rules,* § 13.14 (2d ed.1989).

Other courts have dealt with questions involving continued validity of plan transactions upon conversion and have not undone the effect of transactions consummated pursuant to a confirmed plan. *See In re Ford,* 61 B.R. 913, 916–917 (Bankr.W.D. Wis.1986); *In re Chattanooga Wholesale Antiques, Inc.,* 67 B.R. 899 (Bankr.E.D.

Tenn.1986). The effect of confirmation is a determination of the rights of the parties affected by the plan. *Ford* notes that once a plan has been confirmed, in the absence of any contrary provisions, the title to property of the estate revests in the debtor along with normal ownership rights. *Id.* at 917.

 Confirmation binds the debtor, the creditors, and the equity holders. 11 U.S.C. § 1141(a). It removes a debtor's property from the estate and revests it in the debtor, free of the various claims, except as provided in the plan. 11 U.S.C. § 1141(b) and (c). A confirmed plan is res judicata concerning issues and claims arising thereunder and establishes a necessary finality by the order of confirmation to the terms of the plan, which binds the debtor, the creditors and the equity interests. *See In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 891 F.2d 159 (7th Cir.1989). The debtor is then no longer a debtor-in-possession and the estate ceases to exist, unless the plan provides otherwise. *See U.S. v. Redmond*, 36 B.R. 932, 934 (D.Kan.1984); *In re W.R.M.J. Johnson Fruit Farm, Inc.*, 107 B.R. 18, 19 (Bankr. W.D.N.Y.1989); *In re Grinstead*, 75 B.R. 2, 3 (Bankr.D.Minn.1985).

 Thus, at first blush, the provisions of Section 4.1(f) of the plan appear to transfer collection of the preferences and the causes of action to the Committee. Accordingly, T & Z contends same are no longer property of the bankruptcy estate. The fatal flaw in T & Z's approach, however, is that it ignores the additional plan provision of Section 5.4 by which the Debtor expressly retained the right to prosecute any and all avoidance actions subject to the Committee's rights under Section 4.1(f). The language used in Section 4.1(f) gave the Committee authority to prosecute actions to recover the preferences by use of the word "may", rather than the mandatory predicate by use of the word "shall". Hence, the transfer of the preferences recovered and the right or authority to pursue such causes of action by way of the assignment language used in Section 4.1(f) was not absolute or unconditional. Had

the Committee not pursued any of the preferences, the Debtor could have pursued same pursuant to its reserved rights under Section 5.4 for the benefit of its unsecured pre-petition creditors, as contained in Section 4.1(f) of the plan. The covenants of cooperation and furnishing records contained in Section 5.5 further buttress the conclusion that the transfer of the preferences to the Committee was not unconditional or absolute. Otherwise, there would be no need for future contacts between those parties if the Committee was to receive the complete bundle of property rights in the preferences.

The plan left the Debtor with substantial legal rights and equitable interests retained in the preferences post-confirmation that remained in the Debtor for the benefit of the unsecured creditors. Upon conversion, those reserved rights passed to the Trustee under either the broad umbrella of section 541(a)(1) or section 541(a)(6), as proceeds of or from property of the estate. The Trustee can exercise his powers under section 541(a)(3) to recoup other avoidable pre-petition transfers of property that would become property of the estate. The preference claims were property of the estate as of the date of the petition and subject to the plan provisions were conditionally assigned to the Committee if and to the extent that the Committee pursued them, but reserved for the Debtor to pursue to the extent that the Committee did not. The preferences were not new property acquired post-petition that did not become property of the estate upon conversion. *See In re Myrvold*, 44 B.R. 202 (Bankr.D.Minn.1984), *aff'd*, 784 F.2d 862 (8th Cir.1986).

Section 542(a) requires turnover of property of the estate to the Trustee by entities other than custodians. Although not specifically invoked by the Trustee, but applicable here nonetheless, section 543(a),(b)(1) and (2) requires custodians to turnover and account for property of the estate to the Trustee. Section 543(c)(2), in turn, allows the Court to authorize payment of reasonable compensation for services rendered and expenses incurred. Clearly, T & Z has

constructively held possession of the preference proceeds in its segregated account, after receiving authority of this Court, for the purpose of administration of such property, pursuant to Section 4.1(f) of the plan, as contemplated by the statutory definition of a custodian under section 101(10)(C).

■ An additional significant factor, overlooked by both parties, which supports these conclusions is the fact that conversion of the case effectively terminated the de jure and de facto existence of the Committee. Under the plan, it is clear that the Committee was intended to act as disbursing agent for the preferences proceeds. Such a function is not uncommon. *See* Resnick, *Bankruptcy Practice and Strategy*, ¶ 19.02[5][a] at 19–23 (1987). Section 1142(a) expressly provides that the Debtor and any entity organized for the purpose of carrying out the plan (the Committee in this case), shall implement same and shall comply with any orders of the Court. Upon entry of the conversion order, however, the case was no longer in Chapter 11 and the Committee faded away, as did the Debtor, even absent a provision in the conversion order discharging the Committee and its members. *See* Sulmayer and King, *Collier Handbook for Creditor's Committees* ¶ 22.01 at 22–4 (1990). No Chapter 7 creditors' committee has been elected under section 705. Someone needs to hold the preference proceeds for a pro rata distribution of the net amounts remaining after payment of any allowed fees, expenses or claims against same. The Trustee is the statutory representative of the estate and is the logical choice given his duties under sections 323, 521(4), and 704(1) and (2). *See Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1342–43 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988) (the trustee in bankruptcy acts as representative of all the unsecured creditors). In addition, section 1142(b) provides the authority for the Court to direct any necessary party to perform any other act that is necessary for the consummation of the plan. Thus, the Code contains the requisite basis for the Court to order the Trustee to complete the performance under the plan which neither the Debtor nor the Committee can complete. The Court's authority extends to post-confirmation matters concerning implementation or execution of the plan. *Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228 (4th Cir.1987). Even without specific plan provisions, the Court's jurisdiction continues post-confirmation concerning issues of plan interpretation and administration. *In re Johns–Manville Corp.*, 97 B.R. 174 (Bankr.S.D.N.Y.1989).

The arguments and authorities cited by the parties concerning the disputed assignment under Illinois law are inapposite. The plan terms and provisions were negotiated, drafted and approved under the provisions of the Code. Resort to Illinois law is neither appropriate nor necessary. Moreover, none of those authorities are on point or binding. Although the Trustee argues that the assignment to the Committee is not clearly intended, some form of assignment was clearly intended, albeit one made with some reserved rights in the Debtor. The Committee was only intended to be the stakeholder of the preferences it recovered. Neither the Committee, T & Z, nor the Debtor had any proprietary interest in the preference proceeds under the plan. They were to be recouped for the benefit of the unsecured creditors, whether recovered by the Committee or the Debtor. Other judges of this court have allowed assignments of avoidance powers pursuant to plans of reorganization. *See In re Xonics, Inc.*, 63 B.R. 785 (Bankr.N.D.Ill.1986); *see also, In re Sweetwater*, 884 F.2d 1323 (10th Cir.1989).

Section 1123(a)(5)(B) expressly contemplates the transfer of part of the property of the estate to an entity organized before confirmation of the plan. Additionally, section 1142(a) provides that any entity, as well as the debtor, shall carry out the plan. In this case, both the Debtor and the Committee are out of business and neither can carry out the plan provisions to complete recovery and distribution of the preferences. There is no reason for this Court not to follow *Xonics* and uphold the integrity of the confirmation order. The Trust-

ee cannot revoke the order under section 1144 because no fraud in its procurement has been alleged and more than 180 days since its entry elapsed before the Trustee filed his motion. Someone has to complete the administration of the preference proceeds and possibly pursue additional preference actions. Furthermore, someone may need to pursue actions under sections 544 and 548 which neither the Committee, T & Z, nor the Debtor have brought to date.

■ The Trustee's other arguments that use of the preference funds to pay T & Z and the unsecured creditors violates sections 507, 503(b) and 726 are equally unavailing. The Trustee succeeds to the remaining property of the estate upon conversion, subject to existing unavoidable liens, encumbrances and claims against it. Those include the rights of the unsecured pre-petition creditors under the plan to the net preference proceeds heretofore collected by the Committee, T & Z and the Trustee. Although T & Z's allowed fees as requested under section 331 and contemplated under section 543(c)(2) may be potentially subject to effective subordination in part under section 726(b), if the unpaid Chapter 7 administrative expenses cannot be paid out of other recoveries obtained by the Trustee, some of T & Z's fees were incurred after conversion on January 30, 1990. Hence, some portion of the requested fees are Chapter 7 administrative expenses, although most may have been incurred during the Chapter 11 phase of the case and subject to possible effective subordination under section 726(b). To date, however, there is no showing that the Chapter 7 estate is administratively insolvent. On June 18, 1990, the Trustee and an auctioneer received substantial fees incurred in connection with the sale of certain inventory and equipment from the Debtor's estate. Other administrative expenses of the Chapter 7 phase of the case were allowed by that order and the Trustee has made no showing of any unpaid Chapter 7 expenses or estimated future administrative expenses that cannot be paid out of future recoveries which the Trustee may realize for the estate.

Similarly, T & Z's arguments based upon Illinois trust authorities are inapposite and not controlling. The Debtor reorganized its business as a debtor-in-possession under sections 1107 and 1108 and administered the property of the estate under the fiduciary duties imposed upon it under the Bankruptcy Code as if it were a trust estate. The confirmation order confirmed the negotiated plan among the Debtor and its creditors and approved the "new deal" struck by them. Section 1141 contains the statutory framework for the effect of the confirmation order, not Illinois trust law. Under the plan, the Debtor reserved certain rights to the preferences and other causes of action, notwithstanding the assignment to the Committee for the benefit of the unsecured creditors. The reserved rights passed to the Trustee upon conversion are subject to the distribution rights pro rata of the unsecured creditors and T & Z's claims for compensation. The plan expressly provided for the retained and continued exercise of the Court's jurisdiction concerning such matters. Furthermore, Bankruptcy Rule 3020(d) allows the Court to enter all orders necessary to administer the estate.

T & Z's arguments concerning the effect of sections 1141 and 1144 are well taken. The Trustee is subject to the terms of the plan as are all other parties, but T & Z cannot properly preclude the turnover or accounting requested. Likewise, it is inconsistent for T & Z to argue that the proceeds of the preferences are not property of the estate, but at the same time, apply for fees and expenses to be paid out of the preference funds. The Court cannot award fees under that section out of property which is not property of the estate. T & Z's opposition to the turnover sought produces the anomaly of asking to be paid fees out of a fund which they say is not subject to the Court's control. Using T & Z's analogy of a trust under Illinois law, it is not illogical for the Trustee to succeed to the possession of the net preference proceeds and distribute them pro rata to the unsecured pre-petition creditors as required by the plan. The Committee can no longer act because it, like the Debtor, is out of

business. Moreover, administering the remainder of the estate as a trust is the Trustee's main business in the case. It cannot fall to T & Z because their duties effectively wind down with the termination of the Committee that employed them. The Trustee is the best candidate for the job of not only collecting any additional preferences or avoiding other transfers and pursuing other causes of action for the benefit of the estate, but also of seeing that the unsecured creditors are paid their pro rata shares of all the preferences recovered.

## B. *T & Z's FEE APPLICATION*

■ Only the Trustee has objected to T & Z's fee application. However, even the Trustee concedes that T & Z's services were reasonable and necessary. The Trustee does not object to the amounts requested. The application shows that T & Z expended over 102 hours of time, and collected $15,251.07 and $61,551.45. The format of the application complies with the required guidelines established by *In re Continental Illinois Securities Litigation*, 572 F.Supp. 931 (N.D.Ill.1983) and the various other decisions of this Court relative to substance and content of fee applications. The results obtained have been greater than the Debtor's original estimate of recoverable preferences. Allowance of the requested fees and expenses appears to be both reasonable and necessary under sections 330 and 331. Jurisdiction under Section 9.1 of the plan was reserved for the Court to allow administrative claims for compensation. Exercise of same has been held proper in other cases where plans have been aborted and the case has been converted to Chapter 7. *In re Tri–L Corp.*, 65 B.R. 774 (Bankr.D.Utah 1986). The potential for subordination under section 726(b) exists due to the fact that a substantial portion of the fees were incurred during the Chapter 11 phase of the case. There is no reason shown why the fee application should not be allowed and paid at this time, subject to possible future disgorgement if the estate should prove to be administratively insolvent during the remaining Chapter 7 administration. Al-

though T & Z argues that the fees should be allowed and paid in full under the common fund doctrine, none of the cited cases involved application of same to fee requests of attorneys for Chapter 11 committees, made in superseding Chapter 7 cases. Consequently, none of the authorities involved the complex and interrelated statutory scheme like the Bankruptcy Code. Accordingly, the Court declines to apply the doctrine as the basis for the allowance of the requested compensation and expense reimbursement.

## V. CONCLUSION

For the foregoing reasons, the Court allows the Trustee's motion for turnover and accounting. The Court also allows T & Z's second application for compensation in the amount of $14,630.00 and reimbursement of expenses in the sum of $404.53. T & Z is authorized to draw down the total sum of $19,152.07 from the segregated account it maintains containing the preferences recoveries. This amount includes the unpaid balance of allowed compensation from the first fee application. The balance of the account, including all accrued interest earned thereon, together with a complete accounting showing all receipts and disbursements, shall be turned over to the Trustee within ten days from the entry of this Opinion.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.